UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00210-GNS-HBB

NORMAN GRAHAM                                                              PLAINTIFF

v.

TODD COUNTY, et al.                                                DEFENDANTS

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss filed by the Defendant Estate of Steven T. Silfies ("Silfies Estate") (DN 34).[1] The motions are ripe for adjudication. For the reasons stated below, the motion to dismiss filed by the Silfies Estate and joined by the Morris Estate is **GRANTED.**

---

[1] Defendants Robert Miller ("Miller") and Scott Smith ("Smith") (DN 35) and Defendant Tracy White as Public Administrator for the Estate of Laurin Morris ("Morris Estate") (DN 36) filed motions to join the Silfies Estate's motion to dismiss. Miller and Smith's motion is **DENIED**, and the Morris Estate's motion is **GRANTED.** Defendants Miller and Smith move to join the Silfies Estate's motion to dismiss after each has filed an answer as their first responsive pleading. (Defs.' Mot. Join, DN 35, Defs.' Answer, DN 33). Neither the Silfies Estate nor the Morris Estate have filed answers. As the Sixth Circuit has stated " under the Federal Rule of Civil Procedure 12(b), which requires that '[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted, the [moving defendant's] motion to dismiss under Rule 12(b)(6) should be labeled as a Rule 12(c) motion for judgment on the pleadings since the [moving defendant] had already filed an answer to the complaint." *Satkowiak v. Bay Cnty. Sheriff's Dep't*, 47 F. App'x 376, 377 n.1 (6th Cir. 2002) (alteration in original). Miller and Smith have technically moved for judgment on the pleadings under 12(c), as they had already filed answers, rather than a motion to dismiss under 12(b)(6). Fed. R. Civ. P. 12(c) provides that a motion for judgment on the pleadings cannot be brought until the pleadings are "closed." Further, "the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering." *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 705 (W.D. Ky. 2013) (quoting *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc. Emp. Health & Welfare Plan*, No. 2:08-CV-1140, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009)). The pleadings are not closed here because all not Defendants have filed an answer, and a 12(c) motion for judgment on the pleadings is therefore improper. Thus, Smith and Miller are not permitted to join the Silfies Estate's motion to dismiss. (DN 34).

## I.     STATEMENT OF FACTS AND CLAIMS

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Ct. of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citation omitted).  Graham's Second Amended Complaint provided the following facts, which will be considered as true in accordance with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6): On June 30, 1980, Plaintiff Norman Graham ("Graham") discovered the body of his girlfriend, Janice Kaye Williams ("Williams"), raped and murdered. (Second Am. Compl. ¶ 18, DN 29).  Graham cooperated with law enforcement during the initial investigation. (Second Am. Compl. ¶¶ 23-29).  Alternate suspects were identified and investigated by law enforcement officers, Vernon Albro ("Albro"), Miller, Steven Silfies ("Silfies") —all members of the Kentucky State Police—and Laurin Morris ("Morris"), former Sherriff of Todd County.  The investigation of the alternate suspects, however, was withheld from prosecutors, Graham, and his counsel. (Second Am. Compl. ¶¶ 33-36).  Albro was informed that Williams had received a threatening note prior to her death and Albro and Miller were further apprised that Graham's neighbor had received threatening calls after Williams' death. (Second Am. Compl. ¶¶ 37-38).  Graham was not found to be connected to either occurrence, but  further agreed to participate with Morris in an interrogation involving hypnosis. (Second Am. Compl. ¶¶ 37-38).

Charges were brought against Graham in 1981. (Second Am. Compl. ¶ 30).  The case proceeded to trial, but the rape charge was dismissed by the prosecutor on the first day.  The trial ended with a hung jury on the murder charge. (Second Am. Compl. ¶¶ 63-64).  On February 28,

1982, the Commonwealth dismissed the charges against Graham without prejudice. (Second Am. Compl. ¶ 68).

In 2001, Kentucky State Police ("KSP") Detective Brad Stevenson ("Stevenson") began investigating the Williams murder. (Second Am. Compl. ¶ 88). Stevenson presented evidence to the KSP Laboratory for testing which revealed two sources of semen and DNA found on vaginal swabs taken from Williams. (Second Am. Compl. ¶¶ 88-89). In 2006, KSP detectives Silfies and Smith took over the investigation. (Second Am. Compl. ¶¶ 91-92). In October 2008 Graham was retried for the murder and rape of Williams. He was convicted and sentenced to 40 years in prison of which he ultimately served 9 years. (Second Am. Compl. ¶¶ 98-99). On December 26, 2019, the Todd Circuit Court granted the Commonwealth's motion to dismiss the charges against Graham. (Second Am. Compl. ¶ 100).[2] Graham alleges the Defendant officers—acting both alone and in concert—suppressed evidence indicative of Graham's innocence in the murder of Williams. (Second Am. Compl. ¶¶ 106-179).

Graham filed this action asserting claims under both federal and state law. In particular, Graham asserts claims under 42 U.S.C. § 1983 for: malicious prosecution; Fourteenth Amendment due process violations; fabrication of false evidence in violation of the Fourth and Fourteenth Amendments; supervisory liability; failure to intervene; conspiracy to deprive his constitutional rights; and *Monell* liability. (Second Am. Compl. ¶¶ 106-54). He also asserts state law claims for: malicious prosecution; negligent supervision; intentional infliction of emotional distress; and respondeat superior liability. (Second Am. Compl. ¶¶ 155-71).

---

[2] The Second Amended Complaint does not elaborate on the basis of the Commonwealth's motion.

## II. JURISDICTION

This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367 on the basis of federal question and supplemental jurisdiction.

## III. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

### A. Motion to Dismiss (DN 34)

#### 1. *Malicious Prosecution Claim*

The Estates argue that Graham's malicious prosecution claims under federal and state law do not survive the deaths of Silfies and Morris under Kentucky law. (Def.'s Mot. Dismiss 4, DN

34). 42 U.S.C. § 1988(a), which governs proceedings seeking the vindication of civil rights, provides:

> [When] the laws of the United States . . . are deficient in the provisions necessary to furnish suitable remedies . . . , the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988(a). In *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019), the Sixth Circuit explained the operation of Section 1988(a):

> First, a district court must determine whether there is an applicable federal law that covers the issue, and, if there is, apply it. Second, if there is no relevant federal law, then the district court must determine what the appropriate rule is in the state where the district court sits. Third, the district court must determine whether the law of that state is "inconsistent with the Constitution and laws of the United States;" if there is no inconsistency, the state law is used, but if inconsistency exists, a federal common-law rule is used.

*Id.* at 810 (internal citations omitted) (citing *Robertson v. Wegmann*, 436 U.S. 584, 588-89 (1978)). District courts have the power to "apply state statutes . . . within their jurisdiction when federal laws are not adapted to the protection and vindication of civil rights so long as the state law to be applied is not inconsistent with the Constitution and laws of the United States." *Hall v. Wooten*, 506 F.2d 564, 567 (6th Cir. 1974). Because "[n]o federal statute or rule says anything about the survivorship of § 1983 claims," the Sixth Circuit has directed district courts to apply the law of the state in which they sit. *Crabbs v. Scott*, 880 F.3d 292, 294 (6th Cir. 2018). Accordingly, Kentucky law will be applied in determining whether Plaintiff's malicious prosecution claim survives against the estates of Silfies and Morris.

Graham relies on *Crabbs* to assert that his malicious prosecution claim survives the deaths of Silfies and Morris, but the Sixth Circuit there considered the application of the pertinent

statute of limitations for Ohio, not Kentucky. *Id.* at 294. A Section 1983 malicious prosecution claim is characterized as a personal injury action. *Id.* at 296 ("We think the appropriate level at which to generalize a § 1983 claim under state law is as a personal injury action, sounding in tort, and nothing further."). The relevant Kentucky statute is KRS 411.140, which provides that "no right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, **except** actions . . . for malicious prosecution . . . intended to recover for the personal injury . . . . " KRS 411.140 (emphasis added). As a sister court succinctly held, "malicious prosecution is among those causes of action excluded by [KRS 411.140] . . . [thus a claim for] malicious prosecution under § 1983 cannot survive." *Roberts v. Girder*, 237 F. Supp. 3d 548, 559 (E.D. Ky. 2017). Accordingly, Graham's claims for malicious prosecution do not survive the deaths of Silfies and Morris.

## 2. *Statute of Limitations*

The Estates assert that the remainder of Graham's claims against them are time-barred as well. (Def.'s Mot. Dismiss 5, DN 34; Def.'s Mot. Join 2, DN 36). In determining the applicable statute of limitations, "federal courts apply the single most analogous state personal injury statute of limitations to claims brought under 42 U.S.C. § 1983." *Clifton v. Sundquist*, 3 F. App'x 277, 279 (6th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). The Estates contend the limitations in KRS 396.011 for presenting claims against estates applies where it states:

> All claims against a decedent's estate which arose before the death of the decedent . . . if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees, unless presented within six (6) months after the appointment of the personal representative, or where no personal representative has been appointed, within two (2) years after the decedent's death.

6

KRS 396.011(1). Graham instead urges for application of KRS 413.140(1), which provides that certain claims, specifically including malicious prosecution, shall "be commenced within one (1) year after the cause of action accrued . . . ."

When there is an apparent conflict between statutes of limitations, the specific limitations period preempts the general one. *B.L. v. Schumann*, 380 F. Supp. 3d 614, 639 n.18 (W.D. Ky. 2019) (citing *Boyd v. C & H Transp.*, 902 S.W.2d 823, 824 (Ky. 1995)). In this instance, however, no conflict is perceived because claims covered by KRS 396.011(1) must have arisen before the decedent's death. *Hoskins v. Beatty*, 343 S.W.3d 639, 641 n.2 (Ky. App. 2011). In this instance, Graham's claims accrued when the charges against him were dropped by the Todd Circuit Court on December 26, 2019. *See King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017) ("[A] malicious-prosecution claim is not available before the favorable termination of criminal proceedings, nor does the limitations period for such a claim begin until the favorable termination of criminal proceedings."); *Hoskins v. Knox Cnty.*, No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *15-16 (E.D. Ky. Mar. 15, 2018) (holding Fourth Amendment fabrication of evidence claim accrues when proceedings terminate in the defendant's favor and supervisory liability claims accrue at the same time as underlying Section 1983 claim); *Anderson v. Knox Cnty.*, No. 6:17-133-KKC, 2018 WL 7500205, at *5-9 (E.D. Ky. Oct. 3, 2018) (conspiracy claim accrued upon the last act done in furtherance of the conspiracy, noting that claim accrued when the plaintiff was acquitted; *Monell* claim accrues at the same time as a failure to intervene claim). This includes the negligent supervision claim asserted against only Morris. *Anderson*, 2018 WL 7500205, at *14 ("[The plaintiff's] negligent supervision claim accrued at the same time as the Kentucky law malicious prosecution claim from which it derives . . . ." (citation omitted)). Suit was filed on December

17, 2020, within one year of the dismissal of the criminal action and was therefore timely. (*See* Compl. 1, DN 1).

The Estates argue that even if the claims accrued upon dismissal of the charges by the Todd Circuit Court, Graham did not meet the statute of limitations due to the nonexistence of the decedents' estates when the suit was filed. (Def.'s Mot. Dismiss 8, DN 34, Def.'s Mot. Join 1, DN 36). Silfies' estate was closed on October 25, 2019. Graham filed this suit against the Silfies Estate on December 17, 2020, but Silfies' estate had closed on October 25, 2019, and Graham did not name the administrator as a defendant until May 18, 2021. (*See* Compl.; *see* Second Am. Compl., DN 29, Def.'s Mot. Dismiss Ex. 1, at 2, DN 34-1).³ Morris died on September 3, 2013. (Def.'s Mot. Join Ex. 1, at 1, DN 36-1). There was no estate for Morris until Graham requested it be opened on April 29, 2021, and a personal representative was not appointed for the Morris Estate until May 27, 2021. (Def.'s Mot. Join Ex. 1, at 3, DN 36-1, Pl.'s Mot. Amend Ex. A, at 1, DN 26-1). Accordingly there was no estate, either for Silfies or Morris, at the time of filing the Complaint or within the limitations period.

In *Gailor v. Alsabi*, 990 S.W.2d 597 (Ky. 1999), the Kentucky Supreme Court addressed a similar situation and held, "[a]lthough the action was filed within the period of limitations, the only defendant named in the complaint was deceased. Since the complaint did not name a party defendant over whom the circuit court could acquire jurisdiction, the complaint was a nullity." *Id.* at 600 (citations omitted). In *Cummins v. Estate of Reed*, No. 2018-CA-001281-MR, 2019 WL 5681194 (Ky. App. Nov. 1, 2019), the Kentucky Court of Appeals addressed a similar issue, stating

---

³ "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

"[plaintiff] named the Estate as a party in his petition, even though the Estate had been finalized and closed for a few decades. He did not name the personal representative/executor of the Estate . . . . [T]he Estate is no longer a legal entity because it is closed." *Id.* at *5. The court held that the complaint was time-barred against the estate. *Id.* Similarly, in this instance, there was no legal entity in existence and no administrator was appointed for either estate when the Complaint was filed. By the time Graham properly added the Estates in 2021 by naming the administrators as parties, the statute of limitations had run. Unless Graham's Amended Complaints can relate back to December 17, 2020, when the action was first commenced, his claims against the Estates will be barred by the statute of limitations.

### 3. *Relation Back*

Graham asserts that if the initial Complaint was not timely, his substitution of the administrators of the Estates, Silfies in the First Amended Complaint and Morris in the Second Amended Complaint, should relate back to the original filing date of this action. (Pl.'s Resp. Def.'s Mot. Dismiss 14-16, DN 40). Pursuant to the Fed. R. Civ. P. 15(c), Graham must satisfy four requirements for relation back of amendments adding a party, or changing the name of a party against whom the claim is asserted, namely:

> (1) the claim sought to be amended arose out of the conduct or occurrence alleged or attempted to be alleged in the original complaint; (2) the party to be added received such notice that he will not be prejudiced in defending on the merits; (3) the party to be added knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him; and (4) the second and third requirements were satisfied within the period provided for service of the summons and complaint.

*Coy v. Louisville Jefferson Metro Gov't*, No. 3:06-cv-587-S, 2007 WL 3342368, at *3 (W.D. Ky. Nov. 7, 2007) (citing Fed. R. Civ. P. 15(c)(3)). While noting that Rule 15(c)(3) distinguishes between a mistake of identity and addition of a new party, "Sixth Circuit precedent clearly holds

9

that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the mistaken identity requirement of Rule 15(c)(3)." *Id.* at *3 (internal quotation marks omitted) (citations omitted). "An amendment relates back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake . . . " *Id.* (citation omitted). Furthermore,

> the condition that an added defendant not only must have known about the suit within the normal period for service of process, but also must have had reason to know that he escaped being named only because of a mistake, minimizes the possibility that the application of the Rule will disturb any truly legitimate state policy of repose . . . .

19 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4509 (3d ed. 2021).

The principal issues concerning relation back here are the requirement for notice, whether the Estates knew or should have known that they were involved in the suit, and the fact that the Estates were not in existence when the statute of limitations ran. Notice may be actual or constructive. *Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986). In *Gailor v. Alsabi*, the plaintiff sued the defendant shortly before the statutory period had run and subsequently was informed that the defendant was deceased. *Gailor*, 990 S.W.2d at 600. The plaintiff then sought to amend the complaint after having an administrator appointed and requested that the amended complaint relate back to the time of the original filing. *Id.* The court, interpreting Kentucky's civil rule similar to Fed. R. Civ. P. 15, declined to allow the amended complaint to relate back, stating, "Appellee did not sue the proper defendant; and the proper defendant (the administrator)

could not have had notice within the period of limitations, because he had not yet been appointed." *Id.* at 601.

The Kentucky Supreme Court recently affirmed the holding of *Gailor*, noting "suit filed against a party who is deceased at the time of filing is a nullity as to that party. Unless proper amendments are made prior to the expiration of the statute of limitations, or the requirements of the relation back rule are satisfied, the claim is generally barred." *Jackson v. Est. of Day*, 595 S.W.3d 117, 123 (Ky. 2020) (citing *Gailor*, 990 S.W.2d at 600). The court further stated that "the administrator of the estate needed notice of the claim, but an administrator had not been appointed during the applicable limitations period. So, receipt of notice was an impossibility." *Id.* at 122. The court held:

> The period of limitations for [plaintiffs] expired on May 30, 2016 and July 1, 2016, respectively, and an administrator was not appointed until September 7, 2016. Thus, the Estate could not have known about the proceedings against it during the applicable limitations period as required by CR 15.03, *i.e.*, the Estate did not exist during that time frame.

*Id.* Similarly, in the present action, the Estates were not in existence at the time the statute of limitations ran and were opened and reopened only after the limitations period expired. Graham amended the complaint to name the administrators because they had only been appointed after the statute of limitations had run. Because the Estates were not open when the Complaint was filed, there was no person who could have had notice that a claim had been brought against the Estates and the notice requirement of Fed. R. Civ. P. 15(c) cannot be met.[4]

---

[4] Graham argues that since counsel for each of the Estates was already engaged to represent other Defendants in the current suit, the Estates had constructive notice that suit was being brought against them. (Pl.'s Resp. Mot. Dismiss 18, DN 40). Graham relies upon *Force v. City of Memphis*, No. 95-6333, 1996 WL 665609 (6th Cir. 1996), to assert that when the same attorney represented both the original and the new defendants, the court may consider whether timely notice to counsel was sufficient for purposes of Fed. R. Civ. P. 15(c) to prevent prejudice in defending the action. *Id.* at *2. *Berndt*, however, involved a *pro se* plaintiff for whom the Sixth Circuit *sua*

11

As a result, Graham's claims against the Estates do not relate back for the purpose of satisfying the statute of limitations.

### 4. *Equitable Tolling*

Finally, Graham argues that equitable tolling should apply to extend the statute of limitations. (Pl.'s Resp. Mot. Dismiss 18, DN 40). "Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Carroll v. Holder*, 310 F. App'x 763, 765 (6th Cir. 2009) (alteration in original) (internal citations omitted). Equitable tolling is appropriate if "the party has exercised due diligence and is clearly prejudiced." *Jackson*, 595 S.W.3d at 127 (citation omitted). "The doctrine of equitable tolling is applied sparingly by federal courts," and is typically used "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (internal quotation marks omitted) (internal citation omitted) (citation omitted). Equitable tolling is applied "in limited circumstances where a plaintiff was diligent in pursuing his rights but factors beyond his control prevented the action from being commenced within the limitation period." *Stoner v. Percell*, No. 3:13-CV-00762-CRS, 2014 WL 6611557, at *5 (W.D. Ky. Nov. 20, 2014) (citing *Nanny v. Smith*, 260 S.W.3d 815, 817-18 (Ky. 2008). As the party seeking to invoke equitable tolling, Graham bears the burden to show that it

---

*sponte* remanded to allow amendment of the complaint because no motion to amend was ever filed. *Berndt*, 796 F.2d at 882. Neither *Force* nor *Berndt* involved claims against any estate, but instead addressed allowing an amendment to relate back against individuals who were not initially named as parties. *Id*.


should apply. *Rice v. Music Royalty Consulting, Inc.*, 397 F. Supp. 3d 996, 1012 (E.D. Mich. 2019) (citing *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

Nowhere does the Second Amended Complaint raise the issue of equitable tolling; Graham first asserts this argument in his response to the motion to dismiss. (Pl.'s Resp. Def.'s Mot. Dismiss 19-20, DN 40). To determine whether equitable tolling is appropriate, Graham's efforts at pursuing his claim in a timely manner must be considered. "In order to satisfy the extraordinary circumstance prong [for equitable tolling] at this stage of the proceeding . . . Plaintiff must present sufficient factual allegations . . . ." *Rice*, 397 F. Supp. 3d at 1013. Graham had the opportunity to amend his Complaint twice to add the names of the proper parties, but there are absolutely no facts in any version of Graham's complaints to explain or justify why no action was taken to open the Estates before the statute of limitations had run. *See Lambert v. Perry*, No. 1:16-CV-02783-STA-egb, 2017 WL 4295232, at *2 (W.D. Tenn. Sept. 27, 2017) (declining to apply equitable tolling where the issue was first raised in response to a 12(b)(6) motion and the complaint alleged no facts entitling petitioner to such); *Turman v. Commonwealth Edison Co.*, No. 86 C 136, 1986 WL 5018, at *2 (N.D. Ill. Apr. 22, 1986) (declining to consider equitable tolling facts that were not raised in the complaint on a 12(b)(6) motion); *Kyles v. Staff Mgmt., Inc.*, No. 01 C 8697, 2002 WL 31133176, at *1 (N.D. Ill. July 30, 2002) (holding that equitable tolling was inappropriate on a 12(b)(6) motion as it required the court to consider plaintiff's actions beyond the facts pleaded in the complaint). In the present case, Graham was obviously aware that Silfies and Morris were deceased when this action was filed: he named each Estate as parties in his original Complaint. (Compl. 1). In neither amendment to the Complaint did Graham present allegations attempting to support equitably tolling the limitations period which had expired before the First and Second Amended Complaints. Under these circumstances, equitable tolling does not apply.

## V.     CONCLUSION[5]

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Silfies Estate's Motion to Dismiss (DN 34) is **GRANTED** and all claims against the Silfies Estate are **DISMISSED.**

2. Defendants Scott Smith and Robert Miller's Motion to Join the Motion to Dismiss (DN 35) is **DENIED.**

3. Morris Estate's Motion to Join the Motion to Dismiss (DN 36) is **GRANTED** and all claims against the Morris Estate are **DISMISSED.**

Greg N. Stivers, Chief Judge
United States District Court

March 15, 2022

cc:     counsel of record

---

[5] The Estates' argument regarding Graham's due process claims and intentional infliction of emotional distress will not be addressed as they are dismissed from this action on statute of limitations grounds. Further, Graham voluntarily abandoned his state law claim for intentional infliction of emotional distress (Count IX). (Pl.'s Resp. Def.'s Mot. Dismiss 24).