UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00210-GNS-HBB

**NORMAN GRAHAM**                                                                                    **PLAINTIFF**

**VS.**

**TODD COUNTY, et al.**                                                                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion of Defendant Sheriff Will Ward as Public Administrator for the Estate of Vernon Albro for leave to file a motion to dismiss or otherwise answer Plaintiff's Second Amended Complaint (DN 59). Plaintiff Norman Graham has filed a response in opposition (DN 65), and Ward has filed a reply (DN 66).

Nature of the Case

This is a civil rights case, brought under 42 U.S.C. § 1983, against Todd County and former living and deceased officers of the Kentucky State Police who investigated Graham for a 1980 rape and murder. Graham was tried on the murder charge in 1981 (the prosecutor dismissed the rape charge), resulting in a hung jury. Thereafter the Commonwealth dismissed the charge against Graham without prejudice. In 2001, the KSP reopened the investigation utilizing DNA samples. In 2008 Graham was retried for murder and rape, and this time he was convicted. He was sentenced to 40 years in prison, and he served 9 years of the sentence before the Todd Circuit Court granted the Commonwealth's motion to dismiss the charges. Graham contends that the Defendant officers, acting alone and in concert, suppressed evidence of Graham's innocence (DN 46, p 2-3).

The Present Motion

Ward moves the Court for leave to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or an answer to the complaint. Albro was a detective with the KSP, retiring in 1992 (DN 59, p. 2). He died in 1996 (Id. at p. 2). His estate was opened in Muhlenberg District Court on March 13, 1996 and settled on September 30, 1996 (Id.).

Graham filed his complaint in this action on December 17, 2020. He subsequently moved to re-open the Albro Estate on April 29, 2021 and requested the appointment of a public administrator to accept service of summons and complaint (Id. at p. 2-3). On May 4, 2021, the Muhlenberg District Court entered an order appointing Muhlenberg County Sheriff Will Ward as the public administrator for Albro's Estate (DN 65-1).

Ward has attached an affidavit to his motion (DN 59-5). He contends he was never served with the order appointing him as the Estate's public administrator (Id. at p. 1). Nor does he recall ever being served a copy of the amended complaint in which he was identified as the Estate's representative (Id. at p. 2). He avers that his first knowledge of his appointment was when he received "[i]nterrogatories or discovery papers of some kind" in the action, at which time he contacted the Muhlenberg County Attorney for guidance (Id. at p. 1). The County Attorney, in turn contacted the Office of the Kentucky Attorney General, which declined to provide Ward with representation (Id.). The Attorney General suggested he contact the Kentucky Association of Counties (KACO); however, Muhlenberg County is not insured by KACO (Id.). Ward also attached an affidavit from Muhlenberg County Attorney Ryan Rice (DN 59-4) confirming the facts as reported in his own affidavit. Ward avers that there is no process whereby the Sheriff's Office has access to legal representation in matters such as this.

Ward acknowledges that the time has lapsed for filing a dispositive motion under Rule 12(b)(6), but notes that Rule 6(b) permits the extension of time upon showing good cause and excusable neglect. Moreover, Ward contends that his prospects for prevailing on a dispositive motion are good, given that the other defendant estates have already prevailed on similar dispositive motions.

Graham contends that Ward was properly served with summons and that his over two-year delay in seeking to file a responsive pleading cannot be justified (DN 65). Graham disputes that Ward was not served with notice of his appointment or the complaint. Graham attaches an affidavit from James R. Dudley, Jr., an investigator employed by Graham's counsel (DN 65-6). He avers that on May 21, 2021, he personally served Ward with a copy of summons and amended complaint naming Ward as the public administrator of the Estate, as well as correspondence from Graham's counsel to Ward explaining his appointment as administrator and suggesting he contact the KSP legal department or the Attorney General's Office for any questions regarding his representation of the Estate (Id.). Graham contends that, after the personal delivery of the documents, his counsel made repeated efforts to apprise Ward of his obligations in the matter by letters and accompanying pleadings sent on May 17, 2022 (DN 65-3), August 31, 2022 (DN 65-4), and February 2, 2023 (DN 65-5).

## Discussion

Although Ward's motion questions whether he was properly served with process, his Reply does not challenge the assertion by affidavit that he was personally served on May 21, 2021. Consequently, the undersigned accepts that as the date of service. Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), Ward had 21 days afterward to file a responsive pleading. Rule 12(b) requires that

certain defenses be asserted by motion before the filing of a responsive pleading. Ward acknowledges that his filing of an answer or motion to dismiss at this time would be tardy.

The parties further acknowledge that Fed. R. Civ. P. 6(b)(1)(B) permits the Court to extend a deadline after it has expired, provided the untimeliness was due to excusable neglect and there is good cause for the extension. Excusable neglect is an equitable balance of five factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. Nafziger v. McDermott Int'l, Inc., 467 F.3d 514, 522 (6th Cir. 2006) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

1. The Danger of Prejudice to Graham.

Graham asserts that he will suffer prejudice if the motion is granted because "discovery has been exchanged, and depositions are underway" and it would further be an unreasonable burden on Graham to "devote resources to litigating a motion to dismiss that should have been filed years ago" (DN 65, p. 6). This argument is unpersuasive for two reasons. First, there is still adequate time for discovery and motion practice in the case even with the addition of an active defendant party. Discovery does not close for another three months, and dispositive motions are not due until August 2, 2024 (DN 55). Second, Ward's proposed motion to dismiss (DN 59-1) echoes similar motions made by the estates of former Defendants Steven Siflies and Laurin Morris, which the Court granted (DN 46). The proposed motion does not appear to involve any new facts or legal arguments. Consequently, this factor favors Ward.

2. The Length of Delay and the Potential Impact on Judicial Proceedings.

This factor weighs both for and against Ward. The length of delay has been extensive–well over two years. The potential impact on judicial proceedings, however, favors allowing Ward to file the motion. As earlier noted, other defendants in the case have been dismissed based upon arguments similar to Ward's proposed motion to dismiss. Eliminating parties against whom Graham may have no viable claim favors judicial economy. Moreover, there is a strong preference for resolution of cases by judgment on the merits rather than procedural default. *See* Dassault Systemes, SA v. Childress, 663 F.3d 832, 841 (6th Cir. 2011).

3. The Reason for the Delay.

Ward asserts that he did not file a timely answer or motion because, essentially, he did not know what to do with the matter. He states that he sought guidance from the Attorney General and KACO but was afforded no assistance. The undersigned notes that the Sheriff was appointed by operation of statute, and he did not affirmatively seek to be appointed to administer the Estate. Nonetheless, he was charged by law with a duty to serve in that capacity once appointed by the court. *See* KRS 395.390 & 395.400. Ward apparently did not reach out to the KSP, nor did he acknowledge Plaintiff's counsel's efforts to inform him of his duties as Public Administrator. This factor weighs against Ward.

4. Whether the Delay was Within Ward's Reasonable Control.

This factor is difficult to weigh. It was and is Ward's duty to represent the Estate to the best of his ability, which includes seeing to the timely filing of responsive pleadings. Strictly speaking, nothing prevented him from doing so other than his own inaction. At the same time, however, the undersigned is cognizant that the statute which provided for Ward's appointment as

public administrator did not also provide him with resources with which to procure legal representation for the Estate. On the whole, it weighs in Ward's favor.

5. Whether Ward Acted in Good Faith.

This factor weighs in his favor. There is no indication that Ward acted other than in good faith. Ultimately the determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Id. at p. 392. In sum, the undersigned concludes that the factors weigh sufficiently in Ward's favor to merit permitting the late filing of responsive pleadings.

In addition, the undersigned observes that this finding is a pragmatic one. An extended period of time has elapsed since Plaintiff effected service on Ward, yet Plaintiff has not sought entry of default against the Estate. Had he done so and obtained a judgment, Ward's motion would be one to set aside the default, which would be evaluated under Fed. R. Civ. P. 55(c). Even if styled as a motion for leave to file a late answer, the motion would be construed as a motion to set aside entry of default. See Wilson v. United States Air Force, No. 5:08-324-JMH, 2010 U.S. Dist. LEXIS 150129, at *4 (E.D. Ky. Oct. 22, 2010). As such, the criteria would be different. The motion would be evaluated under three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the culpable conduct of the defendant led to the default. Id. As to the presentment of a meritorious defense, merit is judged not by the likelihood of success, but rather whether the defense relied upon states a defense good at law. "A defense is meritorious if 'it contains even a hint of a suggestion which, proven at trial,

would constitute a complete defense.'"  Id. at *6 (quoting INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 399 (6th Cir. 1987)).  It strikes the undersigned as illogical that Ward should be held to a higher bar here under Rule 6 than if challenging a default under Rule 55, and upon which he would likely prevail.

**WHEREFORE**, the motion of Defendant Sheriff Will Ward as Public Administrator for the Estate of Vernon Albro, DN 59, for leave to file a motion to dismiss or otherwise answer Plaintiff's Second Amended Complaint is **GRANTED**.  The tendered motion to dismiss at DN 59-1 is herewith deemed filed of record.

November 6, 2023

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to:     Counsel of Record

7