IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

BOWLING GREEN DIVISION

CASE NO. 1:20-CV-210-GNS

**ORIGINAL**

NORMAN GRAHAM,

    Plaintiff

v.

TODD COUNTY, ET AL.,

    Defendants

WITNESS:    JOEY JOHNSON

DATE:       NOVEMBER 6, 2024

REPORTER:   SYDNEY LITTLE



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JOEY JOHNSON, taken on November 06, 2024

2..5

Page 2

```
 1                APPEARANCES
 2
 3  ON BEHALF OF THE PLAINTIFF, NORMAN GRAHAM:
 4  Amy Robinson Staples, Esquire
 5  Loevy & Loevy
 6  311 North Aberdeen Street
 7  Third Floor
 8  Chicago, Illinois 60607
 9  Telephone No.: (312) 243-5900
10  E-mail: amy@loevy.com
11  (Appeared via videoconference)
12
13  ON BEHALF OF THE DEFENDANTS, ROBERT MILLER AND SCOTT
14  SMITH:
15  Alea Amber Arnett, Esquire
16  Kentucky State Police - Legal Services
17  919 Versailles Road
18  Frankfort, Kentucky 40601
19  Telephone No.: (502) 782-2163
20  E-mail: alea.arnett@ky.gov
21  (Appeared via videoconference)
```

Page 3

```
 1         APPEAREANCES (CONTINUED)
 2
 3  ON BEHALF OF THE DEFENDANT, TODD COUNTY, AND THE
 4  WITNESS, JOEY JOHNSON:
 5  Aaron Smith, Esquire
 6  English Lucas Priest & Owsley, LLP
 7  1101 College Street
 8  Bowling Green, Kentucky 42101
 9  Telephone No.: (270) 781-6500
10  E-mail: asmith@elpolaw.com
11  (Appeared via videoconference)
```

Page 4

```
                    INDEX
                                              Page
PROCEEDINGS                                     6
DIRECT EXAMINATION BY MS. STAPLES               7
CROSS-EXAMINATION BY MS. ARNETT                23
EXAMINATION BY MR. SMITH                       26
REDIRECT EXAMINATION BY MS. STAPLES            28
```

Page 5

```
                 STIPULATION

The VIDEO deposition of JOEY JOHNSON was taken at
KENTUCKIANA COURT REPORTERS, 730 WEST MAIN STREET, SUITE
101, LOUISVILLE, KENTUCKY 40202, via videoconference, in
which all parties attended remotely, on WEDNESDAY the
6TH day of NOVEMBER 2024 at 1:59 p.m. (ET); said VIDEO
deposition was taken pursuant to the FEDERAL Rules of
Civil Procedure.  THE OATH IN THIS MATTER WAS SWORN
REMOTELY PURSUANT TO FRCP
30.

It is agreed that SYDNEY LITTLE, being a Notary Public
and Court Reporter for the State of INDIANA, may swear
the witness.
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 6

1  PROCEEDINGS
2       THE REPORTER: Okay. We are on record. My
3  name is Sydney Little. I'm the online video
4  technician and court reporter today representing
5  Kentuckiana Court Reporters located 730 West Main
6  Street, Suite 101, Louisville, Kentucky, 40202.
7       Today is the 6th day of November 2024, and the
8  time is 1:59 p.m. Eastern.
9       We are convened by video conference to take the
10 deposition of Joey Johnson in the matter of Norman
11 Graham v. Todd County, et. al. pending in the United
12 States District Court, Western District of Kentucky,
13 Bowling Green Division, case number 1:20-CV-210-GNS.
14      Will everyone but the witness please state your
15 appearance, how you're attending, and the location
16 you're attending from, starting with Plaintiff's
17 counsel?
18      MS. STAPLES: Amy Robinson Staples, appearing
19 remotely for the plaintiff.
20      MR. SMITH: Go ahead, Amber.
21      MS. ARNETT: Oh, okay. Amber Arnett appearing
22 remotely for the state police defendants Robert
23 Miller and Leonard Scott Smith.
24      MR. SMITH: Aaron Smith appearing remotely from
25 Elkton, Kentucky, for Todd County, Kentucky.

Page 7

1       THE REPORTER: Great. Thank you.
2       Mr. Johnson, will you please state your name
3  for the record?
4       THE WITNESS: Arthur J. Johnson, Joey.
5       THE REPORTER: Okay. And do all parties
6  stipulate that the witness is in fact Arthur
7  Johnson?
8       MS. ARNETT: Yes.
9       MR. SMITH: Yes.
10      MS. STAPLES: Yes.
11      THE REPORTER: Thank you.
12      And Mr. Johnson, will you please raise your
13 right hand? Do you solemnly swear or affirm that
14 the testimony you're about to give will be the
15 truth, the whole truth, and nothing but the truth?
16      THE WITNESS: I do.
17      THE REPORTER: Thank you. Counsel may begin.
18           DIRECT EXAMINATION
19 BY MS. STAPLES:
20    Q.  Good afternoon, Mr. Johnson. How are you?
21    A.  Fine. How are you?
22    Q.  I'm doing well. My name is Amy. I represent
23 the plaintiff in this action. I promise I have no plans
24 to keep you here long today at all. In fact, it'll
25 probably be the shortest deposition that I've ever

Page 8

1  taken, but I do appreciate you giving us your time this
2  afternoon. Sir, have you ever given a deposition
3  before?
4     A.  Yes, ma'am.
5     Q.  How many times would you guess that you've
6  been deposed?
7     A.  Two or three.
8     Q.  Okay. And was that in relation to your career
9  in law enforcement?
10    A.  Yes, ma'am.
11    Q.  All right. I'll go through the rules just
12 briefly with you then. First I would ask that you
13 answer the questions verbally as opposed to just nodding
14 your head, that way we'll get an accurate account of
15 your answers to my questions; is that fair?
16    A.  Yes, ma'am.
17    Q.  If I ask a question that is confusing, please
18 don't hesitate to let me know that and I will do my best
19 to rephrase that question. That will likely happen,
20 even if we're here for a short period, so I will not be
21 offended, just let me know that, okay?
22    A.  That's fine.
23    Q.  And though we will only be here for a few
24 minutes, if for whatever reason you need to step out and
25 take break just let me know that. I would just ask if

Page 9

1  there's a question pending, that you go ahead and answer
2  that question first, okay?
3     A.  Yes, ma'am.
4     Q.  And finally, while I am asking you questions,
5  Ms. Arnett, who is on the video, or Aaron, there in the
6  room with you, may have some objections to my questions.
7  If you hear them start to speak, I would ask that you
8  stop speaking, allow them to voice their objections, and
9  then you'll be permitted to go ahead and answer the
10 question, okay?
11    A.  Yes, ma'am.
12    Q.  All right. Sir, are you currently employed?
13    A.  No, ma'am.
14    Q.  Is it true that you previously served as the
15 sheriff for Todd County?
16    A.  Yes, ma'am.
17    Q.  When did you do so?
18    A.  Excuse me?
19    Q.  When?
20    A.  Between 2010 and 2014.
21    Q.  And the sheriff is an elected position in
22 Kentucky; is that correct?
23    A.  Yes, ma'am.
24    Q.  So when were you elected?
25    A.  Probably November of 20 '09 because I took

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 10

1  office in '10.
2  Q.  So you would've taken office in January of
3  2010, you think?
4  A.  Yes, ma'am.
5  Q.  Now, prior to being elected as sheriff in Todd
6  County, did you have any prior law enforcement
7  experience?
8  A.  Yes, ma'am.  I was patrolling with the City of
9  Elkton.
10  Q.  When did you first begin your employment with
11  the City of Elkton Police Department?
12  A.  Can't be sure of the year, but around '82,
13  '84.
14  Q.  All right.  And you remained employed with
15  Elkton until you were elected as Todd County sheriff; is
16  that right?
17  A.  No, ma'am.  I switched backwards and forwards
18  to sheriff's office maybe once or twice and back to
19  Elkton.
20  Q.  Oh, okay.  Can you just --
21  A.  In --
22  Q.  -- oh, I'm so sorry, I thought you were done.
23  Go ahead.
24  A.  -- '97 I went back to Elkton.
25  Q.  Okay.  So if you don't mind, just walk me

Page 11

1  through your law enforcement career as to when you first
2  started and when you made those moves?
3  A.  Okay.  I started it between '82 and '84 with
4  Elkton, like I told you, and was there a year or two.
5  Then maybe I left and went drove a truck and worked with
6  the sheriff's department, some of the special deputy
7  under Orville Francis.  And I went back to Elkton and I
8  went and worked for Bobby Graham who took Orville's
9  place when he passed away.  And I stayed on when Billy
10  Fowler become sheriff.  And I think it's '97 I went to
11  academy because they changed some of the rules and I
12  graduated and went back to Elkton in '97 and stayed
13  there until I become sheriff.
14  Q.  At any point, did you work for Todd County
15  Sheriff Laurin Morris?
16  A.  No, ma'am.
17  Q.  Do you know or did you know Mr. Morris?
18  A.  I met him about two years after I was in
19  office and I handled his funeral escort.
20  Q.  And you handled his funeral escort.  Is that
21  what you said?
22  A.  Yes, ma'am.
23  Q.  Okay.  So I just want to make sure that I have
24  this correct.  You started with Elkton in '82 or so and
25  you said you worked there a couple years, and then you

Page 12

1  left and you were doing some work for the Todd County
2  Sheriff's Office immediately thereafter?
3  A.  Right in thereafter.  Yes, ma'am.
4  Q.  Okay.  And so that would've been in '84 or so?
5  A.  I can't recall the year, just -- it's been so
6  long back, you know.  Back then, the sheriffs couldn't
7  proceed their self, so it was four-year terms, so.  And
8  when I've done that, I worked for Orville Francis as a
9  special deputy, and when he passed away, Bobby Graham
10  got appointed.  I went to work for Bobby Graham, and
11  when he lost Billy Fowler won, and I went to work for
12  Billy Fowler.
13  Q.  And I know I'm asking you to think back a long
14  time ago, but back then in the 80s, when you were
15  working for Orville Francis as a special deputy, do you
16  have any recollection of there being any written
17  policies and procedures in place at the Todd County
18  Sheriff's Office?
19  A.  No.
20  Q.  Do you have any recollection of ever seeing
21  any written policies whatsoever of the Todd County
22  Sheriff's Office back in the early 80s when you first
23  began working there?
24  A.  No.
25  MR. SMITH:  Objection to form, as to early 80s.

Page 13

1  But you can go ahead and answer the question.
2  THE WITNESS:  Sorry.
3  MR. SMITH:  No.  You're good.
4  BY MS. STAPLES:
5  Q.  Am I correct that you would've worked at the -
6  - originally worked at the sheriff's office sometime
7  between '82 and '85 based on your previous testimony?
8  THE WITNESS:  Yes.  I think she asked if I
9  worked there.  She --
10  MR. SMITH:  Would you ask that again, just so
11  he understands, Amy?
12  BY MS. STAPLES:
13  Q.  Am I correct that based on your previous
14  testimony, you would've worked at the sheriff's
15  department the initial time sometime between '82 and
16  '85?
17  A.  Yes, ma'am.
18  Q.  Okay.  And so my question was, at any time
19  when you first worked there between '82 and '85, do you
20  have any recollection of ever seeing any written
21  policies and procedures?
22  A.  No.
23  Q.  Sir, who was the Todd County Sheriff that was
24  in office immediately prior to you being elected
25  sheriff?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00210-GNS-HBB   Document 130-23   Filed 10/27/25   Page 5 of 14 PageID #: 3818
The Deposition of JOEY JOHNSON, taken on November 06, 2024
14..17

Page 14
1    A.   Billy Stokes.
2    Q.   Did Mr. Stokes run for reelection against you
3  in 2010 --
4    A.   He did --
5    Q.   -- or 2009?
6    A.   -- yes.
7    Q.   And it looked as though another individual who
8  ran for Todd County sheriff's -- for the Todd County
9  sheriff's position at that same time was Bobby Miller;
10 is that correct?
11   A.   Yes.  He run the same time I did.
12   Q.   Okay.  So you garnered more votes than both
13 Mr. Miller and Mr. Stokes; is that right?
14   A.   Correct.
15   Q.   Now when you worked -- well, strike that.
16        Did you work at any time with Bobby Miller?
17   A.   Yes.
18   Q.   And where did you work with him?
19   A.   Elkton Police Department.
20   Q.   For how long?
21   A.   At the time he was hired, and I don't know the
22 year, to -- it seemed like he quit before I took office,
23 but he might not have.  It was some time right in there.
24   Q.   Would that have been several years, a couple
25 years?  Do you have any idea?

Page 15
1    A.   Probably a year or two.  I remember when they
2  hired him, but I don't remember the year and -- and I
3  run for office.  He run the same time I did.
4    Q.   Okay.  When you first took office as the Todd
5  County sheriff, did you take any steps to familiarize
6  yourself with the policies of the previous
7  administration?
8    A.   Can you ask -- ask that again, please?
9    Q.   Yeah.  And actually let me back that up.  When
10 you first took office as the Todd County sheriff, did
11 you take any steps to determine whether or not there
12 were any written policies and procedures in place?
13   A.   After I won the election, I checked to see and
14 I couldn't find any.  That's when I started and come up
15 with one.
16   Q.   When you first took office after winning the
17 election, were there still deputies employed at the Todd
18 County Sheriff's Office that had been employed under the
19 previous administration?
20   A.   No.
21   Q.   So did you, kind of, clean house when you
22 first took over?
23   A.   Not exactly.  Billy Stokes didn't have any
24 deputies, so as far as having to take one on, I didn't,
25 and he was gone.  And he had a secretary, and which he

Page 16
1  advised me it would probably be best to get a new one as
2  I went in that office because he was different.
3    Q.   Okay.  I just want to make sure I'm
4  understanding correctly.  When you took over as sheriff
5  in 2009, 2010, Billy Stokes advised you that he didn't
6  have any deputies working for him at that time?
7    A.   Yes.  Let me redo that.  He didn't have any
8  road deputies.  He actually had two court deputies that
9  I kept.
10   Q.   Okay.  And when -- who were the two court
11 deputies that you kept?
12   A.   One was -- I think his last name was Knuckles
13 because his wife was actually the secretary for Billy.
14 And I'm trying to think of her name.  She is still
15 working now.  I'm drawing a blank on her name.
16   Q.   Okay, so --
17   A.   It'll come to me in a minute.
18   Q.   -- there was a female court deputy that was
19 working with the Todd County Sheriff's Department at the
20 time, that you kept on, once you were elected?
21   A.   Correct.  I kept her and Mr. Knuckles as court
22 deputies.
23   Q.   And do you recall having any conversation with
24 Mr. Knuckles or this female deputy that you're speaking
25 of about whether or not there were any written policies

Page 17
1  and procedures in place during the previous
2  administration?
3    A.   No.
4    Q.   What steps did you take personally to try to
5  determine whether or not there were any written policies
6  and procedures in place?
7    A.   I might have asked the judge executive or some
8  of the magistrates and I believe the answer was no.
9  That's when I started working on it.
10   Q.   Who was the county judge executive at that
11 time, sir?
12   A.   It was Arthur Green when I got elected and
13 Mr. Greenfield went into the office the same time I did,
14 so it would've been Arthur Green.
15   Q.   So one of the steps that took was talking to
16 Mr. Green and asking him whether there were any written
17 policies and procedures in place?
18   A.   Correct, to the best of my knowledge.
19   Q.   At any time after having these conversations
20 and once you had taken office, did you ever come across
21 any written policies and procedures?
22   A.   No.
23   Q.   At any time after being elected, did you ever
24 come across any manual?
25   A.   No.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 18

 1   Q.   And so you've already testified that
 2  thereafter you took it upon yourself to begin drafting
 3  written policies and procedures; is that correct?
 4   A.   Correct.
 5   Q.   And to your knowledge, were there any written
 6  policies and procedures in effect at the Todd County
 7  Sheriff's Office whatsoever prior to you drafting the
 8  policies that you drafted?
 9       MR. SMITH: Object to form. You can answer.
10       THE WITNESS: Not that I know of, no.
11  BY MS. STAPLES:
12   Q.   Do you recall how long you had been in office
13  prior to implementing written policies and procedures?
14   A.   I don't know when they went into effect. I
15  know I had them done and I gave them to the fiscal court
16  and they adopted it, but I don't know the dates. It was
17  early in me being elected.
18   Q.   And why is it that you drafted written
19  policies and procedures?
20   A.   Well, after I went to the academy and got out,
21  Bobby Miller hired me for the City of Elkton. And I
22  want add something, there's two Bobby Millers and I
23  don't want you to get them mixed up.
24   Q.   Oh --
25   A.   Okay.

Page 19

 1   Q.   -- yes, sir.
 2   A.   There's a Bobby Miller that worked for the
 3  state police and retired and was the chief of Elkton.
 4  And somewhere, a year or two before I got elected, he
 5  hired a different Bobby Miller. And that's the one that
 6  I -- you know, I worked with him and the other Bobby
 7  Miller, so.
 8   Q.   Okay. Well, thank you for clarifying that for
 9  me because I had no idea. But I just want to make sure
10  I understood what you just said. There was a Bobby
11  Miller that worked for the Kentucky State Police,
12  retired and then became chief of the Elkton Police
13  Department; is that correct?
14   A.   Yes.
15   Q.   That's the Bobby Miller that I was
16  referencing.
17   A.   Okay.
18   Q.   And that's --
19   A.   I just wanted to make sure it wasn't the other
20  one.
21   Q.   Oh, no, no, no. I'm -- I appreciate you --
22   A.   No, run against me. The other Bobby Miller
23  run against me, not the -- not the Bobby Miller at the
24  state police.
25   Q.   Okay. That's great to know. So the Bobby

Page 20

 1  Miller that hired you is the same Bobby Miller that
 2  retired from KSP and then became chief; is that right?
 3   A.   Correct.
 4   Q.   Okay. And then it was a different Bobby
 5  Miller that ran against you in the election for Todd
 6  County sheriff?
 7   A.   Correct.
 8   Q.   Small town to have a couple individuals with
 9  the same name in law enforcement, right?
10   A.   Yes, it is.
11   Q.   Do you know -- were they related, do you know?
12   A.   No, ma'am.
13   Q.   Okay. Okay. So let's go back to that
14  question. So why is it that you decided to draft
15  written policies and procedures?
16   A.   All right. When I went to work for Elkton,
17  Bobby Miller was there. He is very up-to-date on
18  everything that goes on. He told me that we probably
19  needed to have one and stuff, and he told me I ought to
20  look into it. I went to the academy and he hired me
21  when I got out of the academy, and I worked for here for
22  several years.
23   Q.   So it was based on Bobby Miller's
24  recommendation that you made the determination that it
25  was important to draft policies for the Todd County

Page 21

 1  Sheriff's Office; is that right?
 2   A.   Well, no, not really his recommendation. He
 3  just talked to me and said that would be a good thing to
 4  do.
 5   Q.   Okay.
 6   A.   Because working with the City of Elkton, we
 7  had policies and stuff, and that's what he was telling
 8  me I need to cover myself and stuff.
 9   Q.   Now, once you were elected as sheriff, did you
10  hire road deputies?
11   A.   Yes, I did.
12   Q.   How many deputies did you have working under
13  you, sir?
14   A.   Seemed like, to me, at first there was one and
15  then I hired another one. It was a small county, didn't
16  have enough money for a whole lot.
17   Q.   And after the fiscal court adopted the
18  policies and procedures that you had drafted, did you
19  provide a copy of those policies to the deputies that
20  were working in the office?
21   A.   Yes.
22   Q.   Did you expect the deputies that were working
23  in the office to follow the policies that you had put
24  into effect?
25   A.   Yes.



Kentuckiana Reporters
P.O. Box 3903
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 22

1  Q. Did you personally draft those policies or did
2  you have assistance from others or was it a combination?
3  A. It's a combination of them, between me and
4  Gerald Barnett.
5  Q. And who is Gerald Barnett?
6  A. Gerald Barnett was an officer of the Fish and
7  Wildlife who retired, then went to work for Elkton PD
8  and he went to work for me as a special deputy when I
9  went into office.
10  Q. During your tenure as the Todd County Sheriff,
11  did you have any conversations whatsoever with any prior
12  sheriffs or deputies as to whether or not there had ever
13  been any written policies and procedures in place at the
14  Todd County Sheriff's Office?
15  A. No.
16  Q. And just so I'm clear, it's your testimony
17  that the first policies that you're aware of at the Todd
18  County Sheriff's Office were those that you and
19  Mr. Barnett drafted and the fiscal court adopted; is
20  that right?
21  A. Yes.
22  MS. STAPLES: All right. Sir, I told you that
23  would be quick. So that's all the questions that I
24  have for you, but Amber and Aaron may have some as
25  well.

Page 23

1  THE WITNESS: All right.
2  MR. SMITH: Amber, do you have any?
3  MS. ARNETT: Just a couple. Is it okay if I go
4  first?
5  MR. SMITH: Absolutely.
6  CROSS-EXAMINATION
7  BY MS. ARNETT:
8  Q. Okay. Well, Mr. Johnson, can you hear me?
9  A. Yes, ma'am.
10  Q. I'm Amber Arnett. I'm an attorney for the
11  Kentucky State Police and in this case, I represent
12  Robert Miller, who retired from the Kentucky State
13  Police and I also represent another former officer with
14  the Kentucky State Police. His name is Leonard Scott
15  Smith. Now you had mentioned that there were two Bobby
16  Millers and I'm --
17  A. Yes, sir.
18  Q. -- assuming that's Robert Miller, who is one
19  of the defendants in this case, because he was the chief
20  of Police of Elkton and retired from the state police.
21  Did you know him?
22  A. I knew him when he was a detective, when I was
23  working with Elkton on and off, because he worked cases
24  for us. And then when I went to the academy and he
25  hired me, I knew him then, too. So I knew him for

Page 24

1  several years.
2  Q. Would you consider him a friend?
3  A. Yes.
4  Q. Did you know him personally or just
5  professionally?
6  A. I would say kind of both, but more
7  professionally.
8  Q. Did you have enough experience working with
9  him to form an opinion about his work as a law
10  enforcement officer?
11  A. Yes.
12  Q. And what was your opinion of his work as a law
13  enforcement officer?
14  A. He was a very good law enforcement officer,
15  probably one of the best I knew of.
16  Q. Now in this case, there are allegations that
17  he has fabricated evidence and conspired to frame an
18  innocent person. What do you think about those
19  allegations? Are they surprising or not?
20  MS. STAPLES: Objection to form.
21  BY MS. ARNETT:
22  Q. It's okay, you can answer.
23  A. As far as I know it, I wouldn't think he would
24  ever fabricate or do anything or nothing.
25  Q. Thank you, sir. And did you know Leonard

Page 25

1  Scott Smith?
2  A. Yes, ma'am.
3  Q. Did you have a chance to work with him?
4  A. Me and him were very good friends. When I
5  went back to Elkton in '97 he was there as a patrolman.
6  We remained friends and still are to this day.
7  Q. And did you have an opportunity to work with
8  him as a law enforcement officer?
9  A. Yes, ma'am.
10  Q. Did you form an opinion about his work as a
11  law enforcement officer?
12  A. Yes, ma'am.
13  Q. And what would --
14  A. He is a fine officer and, as far as I know,
15  wouldn't do anything wrong.
16  Q. Okay. And just one more question. Have you
17  had any chance to speak with Bobby Miller from the state
18  police in the last year?
19  A. No, ma'am. I would say I probably haven't
20  seen him in eight, nine years.
21  MS. ARNETT: Okay. Thank you. That's all the
22  questions I have. I appreciate your time today.
23  Thank you.
24  THE WITNESS: You're welcome.
25  EXAMINATION

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00210-GNS-HBB   Document 130-23   Filed 10/27/25   Page 8 of 14 PageID #: 3821
The Deposition of JOEY JOHNSON, taken on November 06, 2024
26..29

Page 26

1  BY MR. SMITH:
2    Q.  Mr. Johnson. I've got just a few. I want to
3  go back and make sure that we got your employment
4  history completely correct. You went to work for Elkton
5  Police Department sometime between 1982 and
6  1984?
7    A.  Correct.
8    Q.  Was it then after 1984 when you would've gone
9  to work for the sheriff's department in Todd County?
10   A.  Yes.
11   Q.  Okay. So it was that -- yeah. I know you
12 don't know exactly when, and that's okay because it's
13 been a long time ago. But is it true that it would've
14 been after 1984?
15   A.  Right around there --
16   Q.  Okay.
17   A.  -- true.
18   Q.  All right. Fair enough. And I know the
19 specifics are hard, so I'm not expecting any more than
20 that. Did you ever work for the sheriff's department
21 while Laurin Morris was sheriff?
22   A.  No.
23   Q.  Okay. So you never worked with Mr. Morris?
24   A.  No.
25   Q.  All right. And your first job in law

Page 27

1  enforcement would've been with the Elkton PD somewhere
2  between '82 and '84, correct?
3    A.  Correct.
4    Q.  Okay. Did you ever work -- in that capacity
5  with Elkton PD, did you ever work with Sheriff
6  Morris --
7    A.  No.
8    Q.  -- that you recall? Okay.
9    A.  No.
10   Q.  So you didn't have any professional
11 interactions with him early in your career?
12   A.  No.
13   Q.  Okay. And I think you testified the first
14 time you met him was after you had taken office in 2010,
15 correct?
16   A.  Correct.
17   Q.  Okay. Given that you never worked for Sheriff
18 Morris in the sheriff's department, We've established
19 that, do you have any knowledge whatsoever of what
20 policies or procedures did or did not exist back then
21 when Mr. Morris was sheriff?
22   A.  No.
23   Q.  Okay. Have you ever discussed with anyone or
24 been told by anyone what policies or procedures existed
25 back when Sheriff Morris was in office?

Page 28

1    A.  No.
2    Q.  Okay. Did you have any involvement whatsoever
3  in the investigation and subsequent prosecution of
4  Norman Graham?
5    A.  No.
6    Q.  Do you have any knowledge of that case beyond
7  what you may have seen in the newspapers?
8    A.  That's about -- what I've seen in the
9  newspaper and heard on our radio one time.
10   Q.  Okay. But in your professional capacity in
11 law enforcement, am I correct in saying that you had no
12 involvement in that investigation or prosecution?
13   A.  No involvement.
14       MR. SMITH: Okay. Those are all my questions.
15            REDIRECT EXAMINATION
16 BY MS. STAPLES:
17   Q.  I do have just a couple follow-up questions,
18 sir, based on those questions and the questions that
19 Ms. Arnett asked you. Based on your testimony that you
20 had no involvement in the investigation or prosecution
21 of Mr. Graham, you can't testify today to any personal
22 knowledge of what Robert Miller may have done or not
23 done during that investigation; is that correct?
24   A.  Correct. None.
25   Q.  And based on the fact that you had no personal

Page 29

1  involvement in the investigation or prosecution of
2  Norman Graham, likewise you cannot testify to any
3  personal knowledge of what Leonard Scott Smith may or
4  may not have done during that investigation; is that
5  correct?
6    A.  Correct.
7    Q.  All right, sir. And I think I asked you this
8  earlier, but I just want to make sure. At any point
9  during your tenure at the Todd County Sheriff's Office,
10 whether it was working as a special deputy, a deputy or
11 as the sheriff, were you aware of any written policies
12 and procedures that were in place, other than the ones
13 that you yourself implemented?
14       MR. SMITH: Objection. Asked and answered.
15       You can answer.
16       THE WITNESS: No.
17       MS. STAPLES: Okay. Thank you, sir. That's
18    all that I have. I really appreciate your time
19    today.
20       THE REPORTER: Anyone else?
21       MR. SMITH: Nothing for me.
22       MS. ARNETT: That's it for me.
23       THE REPORTER: Okay. And before we go off the
24    record, Ms. Staples, would you like a copy?
25       MS. STAPLES: Yes, please.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 30

1  THE REPORTER: And do you have a preference on
2  the format?
3  MS. STAPLES: Oh, just the PDF.
4  THE REPORTER: PDF. Got you. And then
5  Mr. Smith, would you like a copy?
6  MR. SMITH: Same here, yes.
7  THE REPORTER: PDF. Okay. And Ms. Arnett?
8  MS. ARNETT: Same for me as well.
9  THE REPORTER: Okay. I'll take us off the
10 record.
11       (DEPOSITION CONCLUDED AT 2:29 P.M. ET)

Page 31

1                CERTIFICATE OF REPORTER
2                   STATE OF INDIANA
3
4  I do hereby certify that the witness in the foregoing
5  transcript was taken on the date, and at the time and
6  place set out on the Title page here of by me after
7  first being duly sworn to testify the truth, the whole
8  truth, and nothing but the truth; and that the said
9  matter was recorded digitally by me and then reduced to
10 typewritten form under my direction, and constitutes a
11 true record of the transcript as taken, all to the best
12 of my skill and ability.  I certify that I am not a
13 relative or employee of either counsel, and that I am in
14 no way interested financially, directly or indirectly,
15 in this action.
16
17
18
19     [signature: Sydney Little]
20
21
22 SYDNEY LITTLE,
23 COURT REPORTER/NOTARY
24 COMMISSION EXPIRES: 12/09/2029
25 SUBMITTED ON: 11/14/2024

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of JOEY JOHNSON, taken on November 06, 2024

32

| 0 | | | | |
|---|---|---|---|---|
| **09** 9:25 | **84** 10:13 11:3 12:4 27:2 | **appointed** 12:10 | **Bowling** 6:13 | **copy** 21:19 29:24 30:5 |
| | **85** 13:7,16,19 | **Arnett** 6:21 7:8 9:5 23:3,7,10 24:21 25:21 28:19 29:22 30:7,8 | **break** 8:25 | **correct** 9:22 11:24 13:5,13 14:10,14 16:21 17:18 18:3,4 19:13 20:3,7 26:4,7 27:2,3, 15,16 28:11,23, 24 29:5,6 |
| **1** | **9** | | **briefly** 8:12 | |
| **10** 10:1 | **97** 10:24 11:10, 12 25:5 | | **C** | |
| **101** 6:6 | | **Arthur** 7:4,6 17:12,14 | **capacity** 27:4 28:10 | |
| **1982** 26:5 | **A** | **assistance** 22:2 | **career** 8:8 11:1 27:11 | **correctly** 16:4 |
| **1984** 26:6,8,14 | **Aaron** 6:24 9:5 22:24 | **assuming** 23:18 | **case** 6:13 23:11,19 24:16 28:6 | **counsel** 6:17 7:17 |
| **1:20-CV-210-GNS** 6:13 | **Absolutely** 23:5 | **attending** 6:15,16 | **cases** 23:23 | **county** 6:11,25 9:15 10:6,15 11:14 12:1,17, 21 13:23 14:8 15:5,10,18 16:19 17:10 18:6 20:6,25 21:15 22:10,14, 18 26:9 29:9 |
| **1:59** 6:8 | **academy** 11:11 18:20 20:20,21 23:24 | **attorney** 23:10 | **chance** 25:3, 17 | |
| **2** | **account** 8:14 | **aware** 22:17 29:11 | **changed** 11:11 | |
| **20** 9:25 | **accurate** 8:14 | | **checked** 15:13 | |
| **2009** 14:5 16:5 | **action** 7:23 | **B** | **chief** 19:3,12 20:2 23:19 | **couple** 11:25 14:24 20:8 23:3 28:17 |
| **2010** 9:20 10:3 14:3 16:5 27:14 | **add** 18:22 | **back** 10:18,24 11:7,12 12:6, 13,14,22 15:9 20:13 25:5 26:3 27:20,25 | **City** 10:8,11 18:21 21:6 | **court** 6:4,5,12 16:8,10,18,21 18:15 21:17 22:19 |
| **2014** 9:20 | **administration** 15:7,19 17:2 | | **clarifying** 19:8 | |
| **2024** 6:7 | **adopted** 18:16 21:17 22:19 | | **clean** 15:21 | |
| **2:29** 30:11 | **advised** 16:1,5 | **backwards** 10:17 | **clear** 22:16 | **cover** 21:8 |
| **4** | **affirm** 7:13 | **Barnett** 22:4,5, 6,19 | **combination** 22:2,3 | **CROSS-EXAMINATION** 23:6 |
| **40202** 6:6 | **afternoon** 7:20 8:2 | **based** 13:7,13 20:23 28:18,19, 25 | **completely** 26:4 | |
| **6** | **ahead** 6:20 9:1, 9 10:23 13:1 | | **CONCLUDED** 30:11 | **D** |
| **6th** 6:7 | **allegations** 24:16,19 | **began** 12:23 | **conference** 6:9 | **dates** 18:16 |
| **7** | **Amber** 6:20,21 22:24 23:2,10 | **begin** 7:17 10:10 18:2 | **confusing** 8:17 | **day** 6:7 25:6 |
| **730** 6:5 | **Amy** 6:18 7:22 13:11 | **Billy** 11:9 12:11,12 14:1 15:23 16:5,13 | **conspired** 24:17 | **decided** 20:14 |
| **8** | **answers** 8:15 | **blank** 16:15 | **convened** 6:9 | **defendants** 6:22 23:19 |
| **80s** 12:14,22, 25 | **appearance** 6:15 | **Bobby** 11:8 12:9,10 14:9,16 18:21,22 19:2, 5,6,10,15,22, 23,25 20:1,4, 17,23 23:15 25:17 | **conversation** 16:23 | **department** 10:11 11:6 13:15 14:19 16:19 19:13 26:5,9,20 27:18 |
| **82** 10:12 11:3, 24 13:7,15,19 27:2 | **appearing** 6:18,21,24 | | **conversations** 17:19 22:11 | **deposed** 8:6 |

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

| | | | | | |
|---|---|---|---|---|---|
| **deposition** 6:10 7:25 8:2 30:11 | **Elkton** 6:25 10:9,11,15,19, 24 11:4,7,12,24 14:19 18:21 19:3,12 20:16 21:6 22:7 23:20,23 25:5 26:4 27:1,5 | **fair** 8:15 26:18 | 21:3 24:14 25:4 | **individual** 14:7 |
| **deputies** 15:17,24 16:6, 8,11,22 21:10, 12,19,22 22:12 | | **familiarize** 15:5 | **graduated** 11:12 | **individuals** 20:8 |
| | | **female** 16:18, 24 | **Graham** 6:11 11:8 12:9,10 28:4,21 29:2 | **initial** 13:15 |
| **deputy** 11:6 12:9,15 16:18, 24 22:8 29:10 | | **finally** 9:4 | | **innocent** 24:18 |
| | **employed** 9:12 10:14 15:17,18 | **find** 15:14 | **great** 7:1 19:25 | **interactions** 27:11 |
| **detective** 23:22 | | **fine** 7:21 8:22 25:14 | **Green** 6:13 17:12,14,16 | **investigation** 28:3,12,20,23 29:1,4 |
| | **employment** 10:10 26:3 | **fiscal** 18:15 21:17 22:19 | **Greenfield** 17:13 | |
| **determination** 20:24 | **enforcement** 8:9 10:6 11:1 20:9 24:10,13, 14 25:8,11 27:1 28:11 | **Fish** 22:6 | **guess** 8:5 | **involvement** 28:2,12,13,20 29:1 |
| **determine** 15:11 17:5 | | **follow** 21:23 | | |
| **DIRECT** 7:18 | | **follow-up** 28:17 | **H** | **J** |
| **discussed** 27:23 | **escort** 11:19, 20 | **form** 12:25 18:9 24:9,20 25:10 | **hand** 7:13 | **January** 10:2 |
| **District** 6:12 | **established** 27:18 | | **handled** 11:19, 20 | **job** 26:25 |
| **Division** 6:13 | **evidence** 24:17 | **format** 30:2 | **happen** 8:19 | **Joey** 6:10 7:4 |
| **draft** 20:14,25 22:1 | **EXAMINATION** 7:18 25:25 28:15 | **forwards** 10:17 | **hard** 26:19 | **Johnson** 6:10 7:2,4,7,12,20 23:8 26:2 |
| **drafted** 18:8,18 21:18 22:19 | | **four-year** 12:7 | **head** 8:14 | |
| | **Excuse** 9:18 | **Fowler** 11:10 12:11,12 | **hear** 9:7 23:8 | **judge** 17:7,10 |
| **drafting** 18:2,7 | **executive** 17:7,10 | **frame** 24:17 | **heard** 28:9 | |
| **drawing** 16:15 | | **Francis** 11:7 12:8,15 | **hesitate** 8:18 | **K** |
| **drove** 11:5 | **exist** 27:20 | | **hire** 21:10 | **Kentuckiana** 6:5 |
| | **existed** 27:24 | **friend** 24:2 | **hired** 14:21 15:2 18:21 19:5 20:1,20 21:15 23:25 | **Kentucky** 6:6, 12,25 9:22 19:11 23:11,12, 14 |
| **E** | **expect** 21:22 | **friends** 25:4,6 | | |
| **earlier** 29:8 | **expecting** 26:19 | **funeral** 11:19, 20 | **history** 26:4 | |
| **early** 12:22,25 18:17 27:11 | **experience** 10:7 24:8 | | **house** 15:21 | **kind** 15:21 24:6 |
| **Eastern** 6:8 | | **G** | | **knew** 23:22,25 24:15 |
| **effect** 18:6,14 21:24 | **F** | **garnered** 14:12 | **I** | **knowledge** 17:18 18:5 27:19 28:6,22 29:3 |
| **elected** 9:21, 24 10:5,15 13:24 16:20 17:12,23 18:17 19:4 21:9 | **fabricate** 24:24 | **gave** 18:15 | **idea** 14:25 19:9 | |
| | **fabricated** 24:17 | **Gerald** 22:4,5, 6 | **immediately** 12:2 13:24 | **Knuckles** 16:12,21,24 |
| | **fact** 7:6,24 28:25 | **give** 7:14 | **implemented** 29:13 | **KSP** 20:2 |
| **election** 15:13, 17 20:5 | | **giving** 8:1 | **implementing** 18:13 | |
| | | **good** 7:20 13:3 | **important** 20:25 | |



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00210-GNS-HBB   Document 130-23   Filed 10/27/25   Page 12 of 14
                                    PageID #: 3825
The Deposition of JOEY JOHNSON, taken November 06, 2024

34

**L**

Laurin  11:15 26:21
law  8:9 10:6 11:1 20:9 24:9,12,14 25:8,11 26:25 28:11
left  11:5 12:1
Leonard  6:23 23:14 24:25 29:3
likewise  29:2
located  6:5
location  6:15
long  7:24 12:6,13 14:20 18:12 26:13
looked  14:7
lost  12:11
lot  21:16
Louisville  6:6

**M**

made  11:2 20:24
magistrates  17:8
Main  6:5
make  11:23 16:3 19:9,19 26:3 29:8
manual  17:24
matter  6:10
mentioned  23:15
met  11:18 27:14
Miller  6:23 14:9,13,16 18:21 19:2,5,7,11,15,22,23 20:1,5,17

23:12,18 25:17 28:22
Miller's  20:23
Millers  18:22 23:16
mind  10:25
minute  16:17
minutes  8:24
mixed  18:23
money  21:16
Morris  11:15,17 26:21,23 27:6,18,21,25
moves  11:2

**N**

needed  20:19
newspaper  28:9
newspapers  28:7
nodding  8:13
Norman  6:10 28:4 29:2
November  6:7 9:25
number  6:13

**O**

Object  18:9
Objection  12:25 24:20 29:14
objections  9:6,8
offended  8:21
office  10:1,2,18 11:19 12:2,18,22 13:6,24 14:22 15:3,4,10,16,18 16:2 17:13,20 18:7,

12 21:1,20,23 22:9,14,18 27:14,25 29:9
officer  22:6 23:13 24:10,13,14 25:8,11,14
online  6:3
opinion  24:9,12 25:10
opportunity  25:7
opposed  8:13
originally  13:6
Orville  11:7 12:8,15
Orville's  11:8

**P**

p.m.  6:8 30:11
parties  7:5
passed  11:9 12:9
patrolling  10:8
patrolman  25:5
PD  22:7 27:1,5
PDF  30:3,4,7
pending  6:11 9:1
period  8:20
permitted  9:9
person  24:18
personal  28:21,25 29:3
personally  17:4 22:1 24:4
place  11:9 12:17 15:12 17:1,6,17 22:13 29:12
plaintiff  6:19 7:23

Plaintiff's  6:16
plans  7:23
point  11:14 29:8
police  6:22 10:11 14:19 19:3,11,12,24 23:11,13,14,20 25:18 26:5
policies  12:17,21 13:21 15:6,12 16:25 17:5,17,21 18:3,6,8,13,19 20:15,25 21:7,18,19,23 22:1,13,17 27:20,24 29:11
position  9:21 14:9
preference  30:1
previous  13:7,13 15:6,19 17:1
previously  9:14
prior  10:5,6 13:24 18:7,13 22:11
procedures  12:17 13:21 15:12 17:1,6,17,21 18:3,6,13,19 20:15 21:18 22:13 27:20,24 29:12
proceed  12:7
PROCEEDINGS  6:1
professional  27:10 28:10
professionally  24:5,7
promise  7:23
prosecution  28:3,12,20 29:1
provide  21:19

put  21:23

**Q**

question  8:17,19 9:1,2,10 13:1,18 20:14 25:16
questions  8:13,15 9:4,6 22:23 25:22 28:14,17,18
quick  22:23
quit  14:22

**R**

radio  28:9
raise  7:12
ran  14:8 20:5
reason  8:24
recall  12:5 16:23 18:12 27:8
recollection  12:16,20 13:20
recommendation  20:24 21:2
record  6:2 7:3 29:24 30:10
REDIRECT  28:15
redo  16:7
reelection  14:2
referencing  19:16
related  20:11
relation  8:8
remained  10:14 25:6
remember  15:1,2
remotely  6:19,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00210-GNS-HBB   Document 130-23   Filed 10/27/25   Page 13 of 14
PageID #: 3826
The Deposition of JOEY JOHNSON, taken on November 06, 2024
35

22,24
**rephrase** 8:19
**reporter** 6:2,4 7:1,5,11,17 29:20,23 30:1,4,7,9
**Reporters** 6:5
**represent** 7:22 23:11,13
**representing** 6:4
**retired** 19:3,12 20:2 22:7 23:12,20
**road** 16:8 21:10
**Robert** 6:22 23:12,18 28:22
**Robinson** 6:18
**room** 9:6
**rules** 8:11 11:11
**run** 14:2,11 15:3 19:22,23

———

**S**

**Scott** 6:23 23:14 25:1 29:3
**secretary** 15:25 16:13
**served** 9:14
**sheriff** 9:15,21 10:5,15 11:10, 13,15 13:23,25 15:5,10 16:4 20:6 21:9 22:10 26:21 27:5,17, 21,25 29:11
**sheriff's** 10:18 11:6 12:2,18,22 13:6,14 14:8,9 15:18 16:19 18:7 21:1 22:14,18 26:9, 20 27:18 29:9

**sheriffs** 12:6 22:12
**short** 8:20
**shortest** 7:25
**sir** 8:2 9:12 13:23 17:11 19:1 21:13 22:22 23:17 24:25 28:18 29:7,17
**small** 20:8 21:15
**Smith** 6:20,23, 24 7:9 12:25 13:3,10 18:9 23:2,5,15 25:1 26:1 28:14 29:3,14,21 30:5,6
**solemnly** 7:13
**speak** 9:7 25:17
**speaking** 9:8 16:24
**special** 11:6 12:9,15 22:8 29:10
**specifics** 26:19
**Staples** 6:18 7:10,19 13:4,12 18:11 22:22 24:20 28:16 29:17,24,25 30:3
**start** 9:7
**started** 11:2,3, 24 15:14 17:9
**starting** 6:16
**state** 6:14,22 7:2 19:3,11,24 23:11,12,14,20 25:17
**States** 6:12
**stayed** 11:9,12
**step** 8:24

**steps** 15:5,11 17:4,15
**stipulate** 7:6
**Stokes** 14:1,2, 13 15:23 16:5
**stop** 9:8
**Street** 6:6
**strike** 14:15
**stuff** 20:19 21:7,8
**subsequent** 28:3
**Suite** 6:6
**surprising** 24:19
**swear** 7:13
**switched** 10:17
**Sydney** 6:3

———

**T**

**talked** 21:3
**talking** 17:15
**technician** 6:4
**telling** 21:7
**tenure** 22:10 29:9
**terms** 12:7
**testified** 18:1 27:13
**testify** 28:21 29:2
**testimony** 7:14 13:7,14 22:16 28:19
**thing** 21:3
**thought** 10:22
**time** 6:8 8:1 12:14 13:15,18 14:9,11,16,21, 23 15:3 16:6,20 17:11,13,19,23

25:22 26:13 27:14 28:9 29:18
**times** 8:5
**today** 6:4,7 7:24 25:22 28:21 29:19
**Todd** 6:11,25 9:15 10:5,15 11:14 12:1,17, 21 13:23 14:8 15:4,10,17 16:19 18:6 20:5,25 22:10, 14,17 26:9 29:9
**told** 11:4 20:18, 19 22:22 27:24
**town** 20:8
**truck** 11:5
**true** 9:14 26:13, 17
**truth** 7:15

———

**U**

**understanding** 16:4
**understands** 13:11
**understood** 19:10
**United** 6:11
**up-to-date** 20:17

———

**V**

**verbally** 8:13
**video** 6:3,9 9:5
**voice** 9:8
**votes** 14:12

———

**W**

**walk** 10:25

**wanted** 19:19
**West** 6:5
**Western** 6:12
**whatsoever** 12:21 18:7 22:11 27:19 28:2
**wife** 16:13
**Wildlife** 22:7
**winning** 15:16
**won** 12:11 15:13
**work** 11:14 12:1,10,11 14:16,18 20:16 22:7,8 24:9,12 25:3,7,10 26:4, 9,20 27:4,5
**worked** 11:5,8, 25 12:8 13:5,6, 9,14,19 14:15 19:2,6,11 20:21 23:23 26:23 27:17
**working** 12:15, 23 16:6,15,19 17:9 21:6,12, 20,22 23:23 24:8 29:10
**would've** 10:2 12:4 13:5,14 17:14 26:8,13 27:1
**written** 12:16, 21 13:20 15:12 16:25 17:5,16, 21 18:3,5,13,18 20:15 22:13 29:11
**wrong** 25:15

———

**Y**

**year** 10:12 11:4 12:5 14:22 15:1,2 19:4 25:18

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com


**years** 11:18,25 14:24,25 20:22 24:1 25:20



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com