UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | | |
|---|---|---|
| NORMAN GRAHAM | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | **Case No.: 1:20-cv-000210-GNS** |
| | ) | |
| **TODD COUNTY, et al.,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

---

**PLAINTIFF'S RESPONSES TO TODD COUNTY, KENTUCKY'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

---

Plaintiff, BRENDA GRAHAM, *as personal representative for Estate of Norman Graham,* by and through counsel, Loevy & Loevy, hereby responds to the First Set of Interrogatories and Requests for Production of Documents propounded by Defendant Todd County, Kentucky as follows:

## I. INTERROGATORIES

**INTERROGATORY NO. 1:**     Please Identify (as that term is defined in the preamble) the Plaintiff fully, giving his full name, including any and all names and aliases used in the past, age, date of birth, social security number and current address.

**ANSWER:  Current Plaintiff: Brenda Ann Corbin Graham, Age 61, DOB:** ███████
**SSN:** ████████**, Address: 232 S.W. Riddle Lane, Lake City, Fl 32024**
     **Initial Plaintiff: Norman Lee Graham, deceased, DOB:** ███████**; DOD:**
**07.09.2023, SSN:** ███████**1**[1]

---

[1] Though Brenda Graham is the Plaintiff in this action, as the personal administrator of Norman Graham's estate, Plaintiff acknowledges these interrogatories were drafted before Norman's passing. Accordingly, Brenda and undersigned counsel are answering these interrogatories, where possible, on Norman's behalf, to the best of their ability.

**INTERROGATORY NO. 2:**      If married, state the full name of your spouse, his/her date and place of birth, the date and place of marriage, his/her place of employment and the names, ages and present address of any children.

**ANSWER:  Norman Graham was married to Brenda Ann Corbin Graham. Norman and Brenda were married in Clarksville, Tennessee. Brenda is unemployed. She has two adult children, Bobby Yates of Lake City, Florida and Tonya Corbin of Springfield, Missouri. Norman had no biological children.**

**Answering further, Plaintiff herein incorporates Answer No. 1.**

**INTERROGATORY NO. 3:**      If you have been married on more than one occasion, for each marriage state the full name of your former spouse, his/her date and place of birth, the date and place of marriage, and the date and place of termination of your marriage.

**ANSWER:  Norman was married previously on two separate occasions to Sandra Cean Norwood Burnette, DOB: ███████, DOD: 4/13/2022. Upon information and belief, they were married in Clarksville, Tennessee. The first marriage was in 1967 and lasted approximately seven to eight years in duration. They married a second time, approximately one year later, ultimately divorcing again in approximately 1978-79.  Norman was also married to a woman named Janice (not Williams) in the mid-1980s for approximately 4 years.  Plaintiff is not in possession of any other identifying information for Janice.**

**Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.**

**INTERROGATORY NO. 4:**      Relying solely on your own independent recollection, please state in detail the specific facts that form the basis of your claims and lawsuit against the Todd County Defendants.  Please state occurrences in chronological order as best you can and should you be unable to recall all or any specific portions of the time period, please indicate so herein.  Within your description of what happened, please identify each and every statement made to you by the Defendants in the case, including, but not limited to, all orders and

requests directed to you, your responses to same and any other remarks by these Defendants herein.

**ANSWER:  Plaintiff objects to this Interrogatory because the information relevant to this Interrogatory is principally in the possession, custody, and control of the Defendants. Plaintiff further objects to the extent that the request calls for the production of information protected by disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privilege or protection. In addition, Plaintiff objects to this Interrogatory because it is overly broad and unduly burdensome in that it asks Plaintiff to identify *each and every* statement made to him by Defendants, all of which is in the possession of the Defendants. Indeed, Plaintiff contends in this lawsuit that there remains exculpatory evidence that the Defendants have still never provided. Plaintiff further objects because the Interrogatory calls for a legal conclusion the Plaintiff is unqualified to provide.**

*Amy Robinson Staples*
_____

Attorney for Plaintiff

**Answering further, subject to, and without waiving the above objections, Plaintiff Brenda Graham has no "independent recollection" responsive to this inquiry. Instead, she refers Defendants to the Complaint, the Second Amended Complaint, the investigative file, the deposition testimony, and Craig Miller's expert report detailing the actions the Todd County Defendants took or failed to take forming the basis of the claims against them.**

**Answering further, Todd County Sheriff Laurin Morris was the initial/one of the initial law enforcement officers to arrive at the scene of Ms. Williams' murder.  Thereafter, Def. Morris and the Kentucky State Police conducted a joint investigation into the crime. Def. Morris canvased the scene and area and took possession of physical evidence. *See,* 1981 Trial Testimony, GRAHAM 006459-006497.**

**At the scene, Norman voluntarily supplied information to Defendant Morris about his activities and whereabouts in the hours preceding Ms. Williams' death. Defendant Morris participated in the September 9, 1980 meeting with Commonwealth's Attorney Jesse Riley, the November 28, 1980 interview of Virginia Merriweather, the December 1, 1980 interview of Judith Blick, a meeting with Commonwealth's Attorney Riley on December 1, 1980, a meeting with the Medical Examiner on December 1, 1980, an interview of Robert Woosley on December 2, 1980, a meeting with Commonwealth's Attorney Riley on December 3, 1980,  an interview of Roxanne Voca on December 5, 1980, an interview of Joe Weatherford on December 5, 1980, an interview of Tamara McClure on December 5, 1980, an interview of J. Johnson on December 5, 1980, an interview of Norman on December 16, 1980 and a meeting with Commonwealth's Attorney Riley on January 20, 1981. *See,* KSP 60, 71, 79-87, 92, 95- 97, 101, 120, 333-339, 362.**

**At the conclusion of Norman's December 16, 1980 interview, Def. Morris accompanied Norman to Dr. Pitzer's office, where Norman's semen and hair samples were obtained. Sometime in 1980, Def. Morris also took Norman to a hypnotist for an interrogation. GRAHAM 006830, 007002—007003.  Def. Morris drafted a May 2, 1981 affidavit charging Norman with rape and murder – crimes he did not commit. GRAHAM 006713-15.  Def. Morris testified falsely at the March 9, 1981 Grand jury, the 1981 trial, and the 2008 trial, falsely implicating Norman. GRAHAM 006459-006497; 006712-006719;**

GRAHAM, 006821-006831; 007002 - 007003. Therein, he gave fabricated testimony that accumulated dew on Norman's car indicated he had been home longer than he stated and that Norman's timeline of events did not alibi him for the time of Ms. Williams' homicide. On December 29, 2006, Def. Morris gave a statement to Def. Silfies. KSP 233, 366.

During the examination of the scene, the interviews, and meetings, Def. Morris learned exculpatory evidence that was not disclosed and/or that defeated probable cause against Norman. For instance, an envelope containing contact information for a soldier with whom Ms. Williams' had exchanged addresses and phone numbers was collected from the scene but never disclosed. KSP 73. Def. Morris learned that the knives he had collected from Norman were not the knives used to stab Ms. Williams over 25 times and that neither contained any blood. KSP 104-105. Def. Morris learned that McClure's timecard contradicted her statement as to when she left work on the morning in question. He learned that in December 1980, Robert Woosley failed his polygraph regarding Ms. Williams' death. Def. Morris testified during the 1981 trial that he had spoken with Norman "several times" and yet, the investigative file only contains reports about two of those conversations – zero of which are reports drafted by Def. Morris. *See,* Graham 006482. Neither Def. Morris' interrogation of Norman by the hypnotist, nor the exculpatory information obtained during this interrogation, was ever documented or disclosed by Def. Morris.

Though the January 13, 1981 lab report indicated that spermatozoa was found in Norman's semen sample, no semen was found on the initial examination of the jumpsuit the Defendants believed Ms. Williams to have been wearing at the time of her death. KSP 112, 125-126. Only after Norman's semen sample was obtained and the jumpsuit was resubmitted to the KSP lab for further testing (after having been stored at the Todd County Sheriff's Office and available to Def. Morris) was semen discovered on the jumpsuit. *Id.*

Answering further, Plaintiff also incorporates all deposition testimony taken in this case, any and all documents used at the depositions taken in this case, referenced in Craig Miller's expert report, and those referenced in any forthcoming expert reports and summary judgment motions and responses.

Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.

**INTERROGATORY NO. 5:** Please state in detail each and every act or omission committed by the Todd County Defendants which tend to support the Plaintiff's allegations set forth in the Complaint.

**ANSWER: Plaintiff objects to this Interrogatory because the information relevant to this Interrogatory is principally in the possession, custody, and control of the Defendants. Plaintiff further objects to the extent that the request calls for the production of information protected by disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privilege or protection. In addition, Plaintiff objects to this Interrogatory because it is overly broad and unduly burdensome in that it asks Plaintiff to identify *each and every* act or omission committed by the Todd County Defendants which tend to support the Plaintiff's allegations, all of which is in the possession**

of the Defendants. Plaintiff further objects because the Interrogatory calls for a legal conclusion the Plaintiff is unqualified to provide.

*Amy Robinson Staples*

Attorney for Plaintiff

Answering further, subject to, and without waiving the above objections, Plaintiff herein incorporates Answer No. 4.

Answering further, Norman Graham was wrongfully convicted for the murder of Janice Williams. As is fully alleged in the Amended Complaint, Defendant Todd County failed to train and supervise its employees, including Def. Morris, on critical police functions that would have prevented the predictable consequence of wrongfully prosecuting and convicting Norman - after failing to pursue viable other suspects, like known convicted serial killer Roy Wayne Dean.

Defendant Todd County had no written policies and procedures in the 1980's, or before 2008. In fact, Todd County has acknowledged its first written policies and procedures for the Todd County Sheriff's Department were implemented by Sheriff Joey Johnson who was in office from 2011-2014. *See,* Todd County's Responses to Plaintiff's First Set of Requests for Production of Documents; *see also,* Joey Johnson Deposition. And despite the extensive investigation Def. Morris conducted in the Williams' investigation, the investigative file is void of *any* reports from Def. Morris.

Answering further, the Todd County Sheriff's Office participated with the Kentucky State Police defendants in the investigations into convicted serial killer Roy Wayne Dean. *See,* GRAHAM 004290-006256. Despite learning that Dean killed multiple women in and around the Todd County area within months and years of Ms. Williams' murder, in a manner eerily similar to Ms. Williams' murder, the Defendants did not disclose that information. Instead Def. Morris and the other Defendant officers conspired and ignored evidentiary leads pointing to Dean and others, failing to preserve and/or disclose exculpatory evidence (including an envelope with contact information of a soldier with whom Williams had exchanged information just hours before her death, a threatening letter addressed to Williams received just days before her death, results of a phone interceptor device placed on a neighbor's phone after she'd received threatening phone calls – from someone other than Norman Graham – indicating the caller was Williams' killer) that pointed towards other potential suspects.

Answering further, Plaintiff refers Defendants to Joey Johnson's deposition testimony, Defendants' Response to Plaintiff's Requests for Documents, and Craig Miller's expert report. Plaintiff also incorporates all deposition testimony taken in this case, any and all documents used at the depositions taken in this case, referenced in Craig Miller's expert report, and those referenced in any forthcoming expert reports and summary judgment motions and responses.

Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.

**INTERROGATORY NO. 6:**     Please identify (as that term is defined in the preamble) each person known or reasonably thought by you to have relevant knowledge of the subject matter described and alleged in your Complaint.

**ANSWER:  Please see Plaintiff's Rule 26(A) disclosures.**

**INTERROGATORY NO. 7:**     Relate any statements made to you or in your presence by the Todd County Defendants concerning or relating to incidents you complain of in this matter.  Give the date, time and place any such statements were made, and the name of the person or persons making such statement, and the name(s) and address(es) of any other person(s) present.

**ANSWER:  Plaintiff herein incorporates Interrogatory Answer Number 4.**

**INTERROGATORY NO. 8:**     State the amount of money you seek to recover in this suit, setting forth the specific injury for which each amount is sought, the method of calculation used to arrive at said amounts and the factual basis of each such claim.  Please identify (as that term is defined in the preamble) all documents which support, reflect or otherwise refer to your claim for such damages.

**ANSWER:  Plaintiff objects to this Interrogatory in that Rule 26 does not require Plaintiff to calculate "a specific sum" for damages like emotional distress that are more appropriately "left to the jury." *Wolgast v. Richards,* 05-10278-BC, 2011 WL 3426187, at \*4 (E.D. Mich. Aug. 5, 2011).**

*Amy Robissar Staples*

_____
Attorney for Plaintiff

**Answering further, and without waiving said objections, Plaintiff will ask a jury to determine the appropriate compensation for the suffering that has**

6

occurred here because of Defendants' misdeeds. Answering further, in other wrongful conviction cases handled by Plaintiff's firm, our clients have historically obtained jury awards averaging in the $1.5-2.25 million range per year of wrongful conviction. *See, Gillespie v. City of Miami Township,* No. 3:13-CV-00416 (S.D. Ohio) ($45 million jury award for 20 years); But, recent cases have far exceeded that range. *Fulton v. Bartick, et. al,* No. 20-CV-3318 (N.D. Ill) (February 2025) ($120 million jury award to two defendants for 16 years each of incarceration)

Answering further, Plaintiff herein incorporates Answer No. 15.

Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.

**INTERROGATORY NO. 9:**    Please Identify (as that term is defined in the preamble) all individuals whom you may call as a witness on your behalf at the trial of this action.

**ANSWER:** Plaintiff objects to Defendants' request to the extent that it is premature, as discovery is ongoing.

*Amy Robinson Staples*

_____
Attorney for Plaintiff

Subject to and without waiving the above-stated objections, Plaintiff directs Defendants to Plaintiff's Rule 26(A) disclosures.

Answering further, Plaintiff will identify all individuals whom she may call as a witness on his behalf at trial as required by the Federal Rules and any scheduling order issued by the Court.

Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.

**INTERROGATORY NO. 10:**    State whether you have ever made any other claim or filed any other suits for personal injury either prior to or subsequent to this incident.  If so,

Identify for each suit, the parties, where suit was filed, when suit was filed and the nature of the dispute involved in each.

**ANSWER:  Plaintiff objects to this Interrogatory because the information sought within is irrelevant to this litigation and unlikely to lead to the discovery of admissible evidence.**



_____
Attorney for Plaintiff

**Subsequent to and without waiving said objection, Plaintiff answers as follows: Upon information and belief, Norman Graham has never made any other claim or filed any other suits for personal injury either prior or subsequent to this litigation.**

**Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.**

**INTERROGATORY NO. 11:**    State whether you have ever had any previous mental or emotional injuries or illnesses.  If so, please provide details of the diagnosis and the time frame from which you suffered each emotional injury or illness.

**ANSWER:  Plaintiff objects to this Interrogatory as overly broad and vague as it does not adequately define "mental or emotional injuries or illnesses." Plaintiff further objects to this interrogatory to the extent it seeks protected health information.**



_____
Attorney for Plaintiff

**Subject to and without waiving said objection, Plaintiff answers as follows: upon information and belief, Norman Graham had no previous mental or emotional injuries or illnesses.**

**Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.**

**INTERROGATORY NO. 12:**    Identify (as that term is defined in the preamble) each and every criminal charge currently pending against the Plaintiff in any court in Kentucky or any other jurisdiction.  As to each and every criminal charge currently pending against the Plaintiff, provide the circumstances giving rise to the criminal charges, the current status of said criminal charges, and any scheduled trial dates.

**ANSWER:  Norman Graham is deceased, and therefore, there are no pending criminal charges pending against him. Answering further, Norman had no criminal charges pending against him prior to his death.**

**INTERROGATORY NO. 13:**    Identify (as that term is defined in the preamble) each and every criminal charge that has been filed against the Plaintiff in any court in Kentucky or any other jurisdiction from 1975 to present.  As to each said charge, provide the circumstances giving rise to the criminal charges, the current status of said criminal charges, and how said charges were resolved.

**ANSWER: Plaintiff objects to this Interrogatory because the information sought is irrelevant to this litigation. Plaintiff further objects because the request is overbroad and seeks information that is likely to lead to the discovery of admissible evidence in that it requests *each and every* criminal *charge* – including misdemeanors and those that are more than 10 years old that are inadmissible under Rule 609.  Plaintiff also objects to this interrogatory in that it is information that is readily obtainable by Defendants and their counsel.**

*Amy Robinson Staples*

_____
Attorney for Plaintiff

**Subject to and without waiving said objections, Plaintiff answers as follows: Upon information and belief, the only charges Norman Graham ever received – other than the wrongful charges that are the subject of this litigation – was a couple driving under the influence of alcohol charges, a possession of marijuana charge in Clarksville, Tennessee, and a possession of a controlled substance charge in Clarksville, Tennessee.  It is unknown when exactly these charges were received, but it is believed they were as early as the 1970s and no later than 2008.**

9

Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.

**INTERROGATORY NO. 14:**    At the time of the occurrences alleged in the Complaint, were you afflicted with or suffering from any medical condition, illness, injury, ailment, or disability of any kind, including without limitation any addiction or withdrawal, and if so, describe the nature of the condition fully.

**ANSWER:**    Plaintiff objects to this Interrogatory because the request is overbroad and not limited in time.  Plaintiff further objects to the extent it seeks protected health information.

*Amy Robinson Staples*

_____
Attorney for Plaintiff

**Subject to and without waiving said objections, Plaintiff answers as follows:**

Norman suffered from no medical condition, illness, or injury before his wrongful conviction. While wrongfully imprisoned, Norman was diagnosed with cancer, for which he was given inadequate treatment.

Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.

**INTERROGATORY NO. 15:**    Identify each element of damages you are seeking to recover by way of this action. As to each such element, identify the amount of damages you are asking for, and state each and every fact on which you rely to request that particular amount.

**ANSWER:  Plaintiff responds by referring the Defendants to paragraphs 101-105 of the Second Amended Complaint {Dckt. 29} and the depositions of Brenda Graham, Susan Graham, and Lisa Potter.**

Answering further, as a result of Defendants' misconduct, Norman Graham was arrested and prosecuted –not just once, but twice – for the murder of Janice Kay Williams, a crime he did not commit. Plaintiff was wrongfully imprisoned for over nine years and

forced to fight to clear his name for over 39 years. He passed away while still seeking the justice to which he is entitled. That injustice stems directly from the Defendants' unlawful actions that caused Norman's prosecution, wrongful conviction, and imprisonment.

Norman was subject to physical and psychological injuries stemming from his wrongful prosecution, conviction, and incarceration. After the original trial, he was forced to look over his shoulder for the next 25+ years, afraid he was once again going to be arrested for a crime he did not commit. He suffered emotionally, after being held at gunpoint when police ambushed Norman at his apartment and wrongfully treated him as a fugitive – though he cooperated with the officers and was living and working out of state.

For the entire period of his wrongful incarceration, Norman was separated from his family, friends, and romantic relationships, losing the opportunity to be a meaningful part of their lives. He was deprived of the affections of his family on a day-to-day basis and all the various pleasures of basic human experience, which all free people enjoy as a matter of right, including the fundamental freedom to live one's life as an autonomous human being. His mother passed away while he was incarcerated, and he was deprived of the opportunity to tell her goodbye, to spend time with her before her death, or to attend her funeral. He faced the death penalty, and all the emotional and psychological suffering associated with the possibility of being executed for a crime he did not commit.

While wrongfully incarcerated, Norman was physically assaulted and robbed. He was incarcerated at Northpoint Training Center when other inmates rioted after days of being held in lock down, setting the prison on fire and putting Norman's life at risk. He feared he was going to be killed during the riot – either by the inmates, the officers, or the fires.

Norman suffered medically while incarcerated. He was diagnosed with cancer and was deprived of the treatment that a non-incarcerated citizen could have obtained. There were times the Department of Corrections refused to transport him to his oncology appointments for treatment, including when he was supposed to have received a bone marrow transplant.

As a result of Defendants' misconduct, Norman also suffered economic damages. While wrongfully incarcerated, Norman was deprived of his ability to work and to further his career as a foreman and structural steel iron worker. He lost wages and the opportunity to contribute to his social security negatively affecting the amount of social security he obtained after his release from prison.

Norman suffered, and continued to suffer until his death, physical, emotional, and psychological pain, humiliation, loneliness, fear, anxiety, depression, despair, distrust, and anger, as well as other effects of his wrongful prosecution, conviction, and incarceration, caused by the Defendants' misconduct as described in Plaintiff's Amended Complaint. Until the day he passed away, Norman continued to live in fear of being wrongfully arrested, convicted, and imprisoned of a crime for which he was innocent. He suffered irreparable harm to his reputation and standing within the community.

**Plaintiff cannot presently quantify the extent of provide a calculation his total losses relating to all his injuries. Plaintiff intends to ask a jury to calculate his total losses.**

**Answering further, Plaintiff herein incorporates Answer No. 8.**

**Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.**


**INTERROGATORY NO. 16:**    In paragraph 42 of the Second Amended Complaint,

you allege that "Defendant Morris failed to document the hypnosis "interrogation" session in any

report…". With respect to that allegation:

a.    Describe specifically what you believe the hypnosis session revealed.

b.    Identify each and every person whom you believe has knowledge of the hypnosis session

and/or of the alleged actions of Sheriff Morris as you describe in paragraph 42.

**ANSWER:  Plaintiff objects to this Interrogatory because the information relevant to this Interrogatory is principally in the possession, custody, and control of the Defendants. Plaintiff further objects to the extent that the request calls for the production of information protected by disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privilege or protection.**

*Amy Lobaissa Staples*
_____
Attorney for Plaintiff


**Answering further, subject to, and without waiving the above objections, Plaintiff herein incorporates his Answer No. 4.**

**Answering further, upon information and belief, KSP Defendant Miller also accompanied Def. Morris and Norman to the hypnotist, though Def. Miller cannot remember if he attended the hypnotist interrogation or not. The identity of the hypnotist is unknown. No report was drafted by Def. Morris about this interrogation, and his testimony at the 2008 trial about it does not reveal the other participants. GRAHAM 006830, 007002—007003. The "interrogation" at the hypnotist revealed what Norman had maintained since discovering his girlfriend's dead body – that he was not responsible for her death.  *Id.*

**Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.**

**INTERROGATORY NO. 17:**     In paragraph 53 of the Second Amended Complaint, you allege that "Defendant Officers fabricated statements and "evidence" that falsely implicated Graham…". With respect to that allegation:

    a.     Identify each and every report, testimony or other evidence you contend Sheriff Morris or any Todd County Defendant fabricated; state each and every fact on which you rely for your contention that they fabricated such evidence; and identify each and every person whom you believe has knowledge of the facts so identified.

    **ANSWER:  Plaintiff herein incorporates Interrogatory Answers Number 4 & 5.**

**INTERROGATORY NO. 18:**     In paragraph 79 of the Second Amended Complaint, you allege that "Defendants… buried exculpatory evidence implicating Dean in the rape and murder of Ms. Williams…". With respect to that allegation:

    a.     Identify each and every piece of exculpatory evidence that you contend Sheriff Morris or any Todd County Defendant buried; state each and every fact on which you rely for your contention that they buried such evidence; and identify each and every person whom you believe has knowledge of the facts so identified.

    **ANSWER:  Plaintiff herein incorporates Interrogatory Answers Number 4 & 5.**

**INTERROGATORY NO. 19:**     In paragraph 113 of the Second Amended Complaint, you allege that "the misconduct described in this [Count I, malicious prosecution] was undertaken pursuant to a routine practice of the Todd County Sheriff's Department to pursue wrongful prosecutions and wrongful convictions through reckless and flawed investigations and coerced and fabricated evidence. In this way, the Defendant, Todd County violated [your] rights

by maintaining policies and practices that were the moving force driving the foregoing constitutional violations." With respect to that allegation:

    a.    State each and every fact on which you rely for your contention that Todd County Sheriff's Department maintained "a routine practice of pursuing wrongful prosecution and wrongful convictions through reckless and flawed investigations and coerced and fabricated evidence."

    b.    Identify each and every person whom you believe has knowledge related to the facts you identified in response to (a).

**ANSWER: Plaintiff herein incorporates Interrogatory Answers Number 4 & 5.**


**INTERROGATORY NO. 20:**    In paragraph 114 of the Second Amended Complaint, you allege that "these widespread practices, so well-settled so as to constitute *de facto* policy in the Todd County Sheriff's Office…were able to exist and thrive because municipal policymakers with authority over these entities exhibited deliberate indifference to the problem, thereby effectively ratifying it." With respect to that allegation:

    a.    State each and every fact on which you rely for your contention that Todd County Sheriff's Department exhibited deliberate indifference to the alleged pursuit of wrongful prosecutions and wrongful convictions through reckless and flawed investigations and coerced and fabricated evidence.

    b.    Identify each and every person whom you believe has knowledge related to the facts you identified in response to (a).

**ANSWER: Plaintiff herein incorporates Interrogatory Answers Number 4 & 5.**

**INTERROGATORY NO. 21:**      In paragraph 146 of the Second Amended Complaint, you allege that "In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity." With respect to that allegation, identify each and every "overt act" allegedly committed by the Todd County Defendants in furtherance of the alleged conspiracy.

**ANSWER: Plaintiff herein incorporates Interrogatory Answers Number 4 & 5.**

**INTERROGATORY NO. 22:**      Identify (as that term is defined in the preamble) all prescription and non-prescription medications, vitamins, minerals, herbs, hormones, supplements, dietary additions, nutritional remedies, alcohol, and illegal drugs or other substances used or consumed by you on the date of this incident and for the five (5) years preceding this incident, and thereafter, and the reason, if any, for said use or consumption.

**ANSWER:    Plaintiff object to this Interrogatory because the vitamins, minerals, herbs, hormone supplements, dietary additions, nutritional remedies, alcohol, and illegal drugs consumed by Norman for the five (5) years preceding this incident and thereafter is irrelevant, not likely to lead to admissible evidence, and is overbroad in subject matter and timeframe. Plaintiff also objects on vagueness in that it is unclear what "the incident" is to which Defendant is referring.**

*Amy Lobrissae Staples*
_____
Attorney for Plaintiff

**Subject to and without waiving these objections, Plaintiff states that during the hours preceding Norman's discovery of Ms. Williams' deceased body, Norman consumed several alcoholic beverages. *See,* Norman Graham Statement, KSP 333-339.**

**Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this Answer as new information comes to light.**

**INTERROGATORY NO. 23:**    Identify (as that term is defined in the preamble) completely each person that you expect to call as an expert witness at trial and state as to each such person:

a.    The person's identity, giving name, profession or occupation and complete residence and business address, including number, street, city, state, zip code and telephone number;

b.    The subject matter on which each such person is expected to testify;

c.    The substance of the facts and opinions to which each such person is expected to testify;

d.    A summary of the grounds for each opinion, including without limitation, the specific data upon which each such person bases his opinion;

e.    A complete bibliography of the textbooks, treatises, articles or other works which each such person regards as authoritative on the subject matter on which each such person will be testifying;

f.    The credentials of each such person as to education, experience, employment and research;

g.    A list of all publications authored by any such person within the preceding ten years;

h.    The compensation to be paid for the study and testimony of each such person;

i.    A listing of any other cases in which each such person has testified as an expert witness at trial or by deposition within the preceding four years, including for each such case, the style and number of the case, the court which the case was pending, the attorneys for the parties in the case, for whom each such person testified in the case, and the amount each such person was paid for their study and testimony in each such case.

j.    Provide copies of all documents (as that term is defined in the preamble) prepared for or by any such person, including without limitation, a written report from each such person which shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor, the data or other information considered by each such person in forming the opinions, any exhibits to be used as a summary of or support for the opinions, the qualifications of each such person, including a list of all publications authored by each such person within the preceding ten years, and a copy of the current curriculum vitae or resume of each such person.

**ANSWER:    Please see Plaintiff's January 31, 2025 expert disclosures from Craig Miller.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

In accordance with the provisions of the Federal Rules of Civil Procedure, the Plaintiffs are requested to produce and permit counsel for the Todd County Defendants to inspect and copy at the offices of English, Lucas, Priest & Owsley, 1101 College Street, Bowling Green, Kentucky, within thirty (30) days after the earliest date available for the commencement of discovery, each of the documents identified in the answers to interrogatories and each of those requested below:

**REQUEST NO. 1:**    All documents identified in your Complaint and all documents identified in response to the interrogatories set forth above and each document relied on or referred to in responding to the interrogatories discussed above or supporting the allegations in the Complaint.

**RESPONSE: Plaintiff objects to the extent this Request of Production seeks non-discoverable information protected by the attorney-client privilege or the attorney work-product privilege or any other applicable privilege. Subject to, and without waiving said objections, Plaintiff has produced all non-privileged documents in his possession, custody, or control that are relevant to his claims. *See,* GRAHAM 000001-007149; COMM ATTY SUB RESP 000001-004029.   Plaintiff has not produced privileged work product or attorney-client communications relating to his legal representation in this case and throughout his years of the criminal case. Plaintiff refers Defendants to his disclosures.**

**Plaintiff's investigation into this matter continues, and she reserves the right to supplement or modify this answer as new information comes to light.**

**REQUEST NO. 2:**    Produce each and every document in your possession, custody or control that you believe supports your claim for the damages you specified in response to Interrogatory No. 15.

**RESPONSE:  Plaintiff herein incorporates the Response to Request No. 1.**

**REQUEST NO. 3:**    Please attach a copy of any and all maps, drawings, photographs,

videotapes, motion pictures, statements of Defendants, or any other items, material or evidence relevant to the case, including but not limited to, any and all exhibits which you may tender at the trial of the case.

**RESPONSE: Plaintiff herein incorporates his Response to Request No. 1. Responding further, Plaintiff objects to this Request because it is premature. Plaintiff will provide such exhibits upon the scheduling order of the Court.**

**REQUEST NO. 4:** Produce the curriculum vitae of any expert witness you may call to testify at trial.

**RESPONSE: Plaintiff objects to this Request because it is premature as expert discovery is still ongoing. Subject to and without waiving that objection, see Plaintiff's January 31, 2025 disclosures.**

**REQUEST NO. 5:** Produce all documents, including without limitation any reports or draft reports, provided to you by any expert witnesses you may call to testify at trial.

**RESPONSE: Plaintiff objects to this request pursuant to Federal Rules of Civil Procedure 26(b)(4)(B) which states that drafts of any expert report or disclosure are protected under Rule 26(a)(2). Plaintiff further objects to this Request because it is premature as expert discovery is still ongoing. Subject to and without waiving that objection, see Plaintiff's January 31, 2025 disclosures.**

**REQUEST NO. 6:** Produce all documents provided by you to any expert witness you may call to testify at trial.

**RESPONSE: Plaintiff objects to this Request because it is premature as expert discovery is still ongoing. Subject to and without waiving that objection, see Plaintiff's January 31, 2025 disclosures.**

**REQUEST NO. 7:** Produce all statements (including without limitation any audiotapes, videotapes, notes or other records of untranscribed statements) that you have personally obtained or received from any person concerning any matter alleged in the Complaint.

**RESPONSE: Plaintiff herein incorporates the Response to Request No. 1.**

**REQUEST NO. 8:** Produce each and every documents in your possession, custody or control that you believe supports your assertion in paragraph 53 of the Second Amended Complaint that you allege that Defendant Officers "fabricated statements and "evidence" that falsely implicated you.

**RESPONSE: Plaintiff herein incorporates the Response to Request No. 1.**

**REQUEST NO. 9:** Produce each and every document in your possession, custody or control that you believe supports your assertion in paragraph 79 of the Second Amended Complaint that you allege that the Defendant Officers buried exculpatory evidence implicating Dean in the rape and murder of Ms. Williams.

**RESPONSE: Plaintiff herein incorporates the Response to Request No. 1.**

**REQUEST NO. 10:** Produce each and every document in your possession, custody or control that you believe supports your assertion in paragraph 113 of the Second Amended Complaint that the Todd County Sheriff's Department maintained "a routine practice . . .to pursue wrongful prosecutions and wrongful convictions through reckless and flawed investigations and coerced and fabricated evidence.

**RESPONSE: Plaintiff herein incorporates the Response to Request No. 1.**

**REQUEST NO. 11:** Produce each and every document in your possession, custody or control that you believe supports your assertion in paragraph 114 of the Second Amended Complaint that the "municipal policymakers with authority over [Todd County Sheriff's Department] exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**RESPONSE: Plaintiff herein incorporates the Response to Request No. 1.**

**REQUEST NO. 12:** Produce each and every document in your possession, custody or control that you believe supports your assertion in paragraph 146 of the Second Amended

19

Complaint that any Todd County Defendant "committed overt acts and was otherwise [a] willful

participant in joint activity."

**RESPONSE: Plaintiff herein incorporates the Response to Request No. 1.**

Respectfully submitted,

s/*Amy Robinson Staples*
One of Plaintiff's Attorneys

Mike Kavonitz
Elliot Slosar
*Amy Robinson Staples
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900

18 Village Plaza, PMB 181
Shelbyville, KY 40065
**local address*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she served the foregoing document upon all parties of record by electronic correspondence on March 24, 2025.

s/*Amy Robinson Staples*